■ In the Matter of ALICE CUNNINGHAM, Petitioner, v EDWARD V. REGAN, as Comptroller of the State of New York, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Comptroller which denied petitioner's application for ordinary disability retirement benefits.

Petitioner, employed as a nurse by the New York State Office of Mental Health at King's Park Psychiatric Center since November of 1966, sustained an injury on October 30, 1979 which prevented her from returning to work. Occupational injury leave with pay (OILWP) was initially denied and a contract grievance was filed. Pursuant to a settlement agreement dated April 9, 1981, petitioner withdrew her request for arbitration and was accorded retroactive OILWP from October 30, 1979 to April 30, 1980, permitted further leave accruals until July 2, 1980, and subsequent to July 3, 1980 was granted disability leave without pay, the duration of which was "subject to all applicable provisions of the Civil Service Law, Rules and Regulations concerning leave without pay". By letter dated April 14, 1981, the employer notified petitioner that her disability leave extended from July 3, 1980 through December 30, 1980, at which point she was deemed terminated from service. Thereafter, petitioner's application for ordinary disability retirement dated January 7, 1981 was rejected by the Comptroller after a hearing on the ground that her employment effectively terminated December 30, 1980, and that she was not actually in

service at the time her application was filed (Retirement and Social Security Law, § 62, subd aa, par 2).*

This court recently confirmed that the language of section 62 of the Retirement and Social Security Law "leaves no room for interpretation" (*Matter of Elsasser v Regan,* 99 AD2d 875, affd 63 NY2d 647). The statute necessitates that the member "[a]ctually be in service", whether actually working or on authorized medical leave, at the time the application is made (*Matter of Murphy v Regan,* 85 AD2d 819, app dsmd 56 NY2d 644, mot for lv to app den 56 NY2d 508; *Matter of O'Neil v Regan,* 78 AD2d 478, 479, mot for lv to app den 54 NY2d 602). In her brief, petitioner does not attempt to challenge her discharge as wrongful, but contends that the Comptroller (1) was required to review her application on the basis of the facts as they existed at the time her application was filed on January 7, 1981, and (2) was not authorized to consider the terms of the subsequent settlement agreement, particularly the retroactive termination date of December 30, 1980. We disagree.

The Comptroller is vested with exclusive authority to determine applications for retirement benefits (Retirement and Social Security Law, § 374, subd b), and where supported by substantial evidence, his determinations must be upheld (see *Matter of Rovegno v Regan,* 103 AD2d 877). It was not unreasonable for the Comptroller to base his determination on the operative facts effected by the settlement agreement, which established a termination of petitioner's service as of December 30, 1980. Petitioner does not contend that the employer abused its discretion in discharging her (see 4 NYCRR 5.2 [b]). Petitioner was on unauthorized leave and thus not in service on January 7, 1981 for purpose of making a retirement application (see 2 NYCRR 309.4). We find nothing in the record to substantiate petitioner's contention that the Comptroller deliberately delayed a review of her application. There is substantial evidence to support the Comptroller's determination that petitioner's application was not filed while she was actually in service (*Matter of Foss v Regan,* 88 AD2d 1005).

Determination confirmed and petition dismissed, without costs. Kane, J. P., Casey, Weiss and Yesawich, Jr., JJ., concur.

Levine, J., dissents and votes to annul in the following memorandum. Levine, J. (dissenting). The Comptroller's determination cavalierly forfeiting petitioner's right to a disability pension, earned over the course of her 13 years of State employment, should be annulled on either of two alternative grounds.

---

\* Petitioner does not contest the denial of her application for accidental disability retirement made at the same time.

First, regardless of whether retroactive effect is given to petitioner's appointing authority's backdating of the period of her leave without pay, undeniably she was actually in State service on January 7, 1981 when she filed for retirement. On that date, her application for occupational injury leave with pay was as yet unresolved and working its way through the grievance/arbitration process. Moreover, by that time, disciplinary charges for involuntarily separating her from State employment had already been determined in her favor. Therefore, as of January 7, 1981, she could not have been automatically removed from State service or deemed to have resigned without prior notice of termination (*Matter of Johnson v Director, Downstate Med. Center,* 41 NY2d 1061). Indeed, even under the previous regulation providing for automatic termination of service after 10 workdays' unauthorized absence (former 4 NYCRR 5.3 [d]), invalidated in the *Johnson* case (*supra*), petitioner would still have been deemed in State service on January 7, 1981 if her authorized leave expired December 30, 1980.

Thus, the conclusion seems inescapable to me that, notwithstanding our dicta in the cases cited by the majority equating State service with either actually working or being on authorized leave,* petitioner's State service had not been terminated as of January 7, 1981. A contrary holding flies in the face of the carefully contrived statutory rights of permanent civil servants not to be summarily deprived of their various privileges of State employment (Civil Service Law, § 75; *Matter of Johnson v Director, Downstate Med. Center, supra*). Nor is present regulation 2 NYCRR 309.4 authority for the Comptroller's ruling. This regulation only serves to confirm court decisions that an employee absent on sick leave remains in State service for retirement purposes (see 2 NYCRR 309.1). The regulation does not expressly apply to the situation here, where petitioner's application for leave was still pending when she filed for retirement. It should not be construed by negative implication as mandating the conclusion that a disabled employee is not in State service unless and until sick leave is formally granted.

Such an interpretation would produce the anomalous result that, for disability retirement purposes, a disabled employee is *not* in State service while his application for such leave is pending, but suddenly returns to State service when and if leave is granted. To make the earned disability pension benefits of a

---

* In each of the cases cited by the majority, the employee had either submitted a formal resignation (*Matter of Elsasser v Regan,* 63 NY2d 647, affg on opn below 99 AD2d 875) or had received a formal notice of termination (*Matter of Murphy v Regan,* 85 AD2d 819, mot for lv to app den 56 NY2d 508; *Matter of O'Neil v Regan,* 78 AD2d 478, mot for lv to app den 54 NY2d 602).

permanent civil servant thus wholly contingent on the vagaries and delays of medical leave application decisions by State appointing authorities is manifestly unjust, will only serve to encourage premature applications for ordinary disability retirement benefits, and is contrary to the underlying objectives of the Retirement and Social Security Law (*Matter of O'Marah v Levitt,* 35 NY2d 593, 596). Here, as in the *O'Marah* case (*supra*), petitioner had not been actually discontinued from service on the operative date; since the employment relationship still existed on January 7, 1981, she was in State service when she filed for her disability pension.

Alternatively, if, despite the foregoing, the end of the period of petitioner's authorized leave without pay is deemed to be critical for retirement application purposes, the Comptroller should not be permitted to apply this rule to the purely retroactive determination of petitioner's period of authorized leave without pay which occurred here. The plain fact is that when petitioner filed for retirement, there had been no determination of her request for a leave of absence. If being absent beyond the period of authorized leave is to result in a forfeiture of pension rights, an administrative agency should not be able to create retroactively that state of facts. When, in April, 1981, the State offered petitioner a settlement of her leave application claim, she had every right to assume that, having already applied for disability retirement, her pension benefits were preserved. Either on the basis of strict statutory construction or of estoppel, a government agency should be barred from retroactively adding the penalty of forfeiture of retirement benefits by a later determination (see *United States v Seatrain Lines,* 329 US 424; *United States v Kopf,* 379 F2d 8; *Hoffman v City of Syracuse,* 2 NY2d 484).

Only two other points require brief discussion. First, since the employer's letter of April 14, 1981, advising petitioner that her authorized leave only extended to the previous December 30, did not notify her that this would constitute a termination of service as of that date or otherwise adversely affect her pension rights, she was not yet aggrieved by that determination for Statute of Limitations or laches purposes (cf. *Matter of O'Neil v Regan,* 78 AD2d 478, mot for lv to app den 54 NY2d 602). Second, the mere fact that the April 9 agreement settling the dispute over her leave with pay was ambiguously stated to the subject to applicable statutory provisions for future fixing of her leave without pay should not be deemed a waiver of the pension rights petitioner could reasonably believe had vested by virtue of her earlier application for retirement (see *Matter of City of Poughkeepsie v Newman,* 95 AD2d 101, 104, app dsmd 60 NY2d 859).

For all of the foregoing reasons, the Comptroller's determination denying petitioner ordinary disability retirement benefits should be annulled.