[681 NYS2d 391]

In the Matter of BOARD OF EDUCATION OF THE UNION-ENDICOTT CENTRAL SCHOOL DISTRICT, Petitioner, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.

Third Department, December 10, 1998

### APPEARANCES OF COUNSEL

*Ferrara, Fiorenza, Larrison, Barrett & Reitz, P. C.,* East Syracuse (*Frank W. Miller* of counsel), for petitioner.

*Gary Johnson,* New York State Public Employment Relations Board, Albany (*David P. Quinn* of counsel), for respondent.

*James R. Sandner,* Albany (*Kevin H. Harren* of counsel), for Barry Winters, as President of the Union-Endicott Maintenance Workers Association, respondent.

### OPINION OF THE COURT

MERCURE, J.

During September 1992, petitioner had public discussions as to whether the Union-Endicott Central School District should participate in a rebate program sponsored by New York State Electric and Gas Company, which involved the replacement of ballasts and lamps in thousands of fluorescent fixtures with high-efficiency energy-saving models. At a public session conducted on September 21, 1992, petitioner voted to participate in the program and to hire an outside contractor to perform the work. Petitioner advertised for bids on November 3, 1992 and awarded the contract to an independent electrical contractor on November 16, 1992.

In January 1993, the Union-Endicott Maintenance Workers' Association (hereinafter the union) filed an improper employer practice charge with respondent Public Employment Relations Board (hereinafter PERB) alleging that the School District had violated Civil Service Law § 209-a (1) (d) when it hired an outside contractor to perform the work of replacing ballasts and lamps, work previously performed exclusively by union employees. Ultimately, PERB ruled in favor of the union and ordered, as relevant in this proceeding, that the School District cease and desist from subcontracting or otherwise transferring from the union employees the work of replacing ballasts or lamps in existing lighting fixtures and that the School District cause the union employees to be made whole for any wages or benefits lost as a result of the contracting out of the work. Petitioner thereafter commenced this CPLR article 78 proceeding to annul PERB's determination. After resolving a threshold standing issue in favor of petitioner, Supreme Court transferred the proceeding to this Court pursuant to CPLR 7804 (g).

Initially, we are wholly unimpressed with PERB's contention that petitioner lacked standing to prosecute the instant challenge to PERB's administrative determination. Although pursued at great length, the argument is largely pedantic and offers little useful analysis. Entirely overlooked by PERB is the fact that, within the context of this proceeding, the interests of the School District and of petitioner (statutorily defined as the "governing body charged with the general control, management and responsibility of [its] schools" [Education Law § 2 (14)]) are indistinguishable and, in fact, indivisible. Although the proceeding is technically styled in the name of the Board of Education, even a cursory review of the petition begs the conclusion that the proceeding was brought on behalf of and in furtherance of the interests of the School District. Consistent with that view, the petition was signed and verified not by a School Board member or officer but by an Assistant Superintendent of Schools. It is undisputed that the Superintendent of Schools, as the School District's chief executive officer (see, Civil Service Law § 201 [10]), was authorized to bring the proceeding on behalf of the School District. We conclude that, at the very most, respondents' affirmative defense based upon petitioner's alleged lack of standing raised a question of simple and nonprejudicial misnomer, subject to correction pursuant to CPLR 2001 (see, e.g., Covino v Alside Aluminum Supply Co., 42 AD2d 77).

We are persuaded by petitioner's contention that the union failed to comply with the notice of claim requirement of

Education Law § 3813 (1) and that its improper practice charge should have been dismissed by PERB on that basis. Although PERB continues to argue otherwise, this Court has unequivocally held that the filing of a timely notice of claim pursuant to Education Law § 3813 (1) is a condition precedent to a collective bargaining unit's filing of an improper practice charge against a school district (*see, Matter of Deposit Cent. School Dist. v Public Empl. Relations Bd.*, 214 AD2d 288, *lv denied* 88 NY2d 866; *Matter of Board of Educ. v New York State Pub. Empl. Relations Bd.*, 197 AD2d 276, *lv denied* 84 NY2d 803). Neither the union nor PERB contends that the School District received actual notice prior to February 10, 1993, the date of filing of the School District's answer to the improper practice charge, so the question is whether the union's improper employer practice charge accrued within the three-month period preceding that date (*see*, Education Law § 3813 [1]). As a practical matter, the inquiry is reduced to whether the union's claim accrued (1) on September 21, 1992, when the Board of Education resolved to engage an outside contractor to perform the work, or (2) as found by PERB, "in mid-November 1992, when [petitioner] issued a resolution accepting the contractor's bid and awarding it a contract".

We conclude that the earlier date should control. Fundamentally, the accrual of a claim, as that term is employed in Education Law § 3813 (1), "occurs when damages have matured and become certain and ascertainable" (*Matter of Chanecka v Board of Educ.*, 243 AD2d 1011, 1012, *appeal dismissed* 91 NY2d 920, *lv denied* 92 NY2d 802). The term "claim accrued" is not synonymous with the term "cause of action accrued" (*Boeckmann & Assocs. v Board of Educ.*, 207 AD2d 773, 775), and a claim can accrue far earlier than a cause of action based upon the same underlying subject matter (*see, e.g., id.*). The key to ascertaining a claim's accrual date is to look at the crux of the challenge being asserted (*see, Matter of Villella v Department of Transp.*, 142 AD2d 46, 48-49, *lv denied* 74 NY2d 602). In this case, the union has no quarrel with the over-all bidding process, the actual awarding of the bid or the terms of the contract ultimately entered into. It cares not what contractor is doing the work or on what terms; rather, its complaint is that the work is not being done by School District employees represented by the union. Thus viewed, it becomes apparent that the key event was petitioner's decision to put the work out to bid, made in September 1992. At that point (to the extent that it ever could be), the damage to the union employees was readily ascertainable.

As a final matter, we find nothing in this Court's prior decision in *Matter of Odessa-Montour Cent. School Dist. v New York State Pub. Empl. Relations Bd.* (228 AD2d 892) that warrants a contrary view in this case. Here, the School District has advanced no argument, either before PERB or in this proceeding, that petitioner, as a legislative body, could not violate Civil Service Law § 209-a (1) (d) (*compare, Matter of Odessa-Montour Cent. School Dist. v New York State Pub. Empl. Relations Bd., supra*). To the contrary, the School District's position has always been that the ballast and lamp replacement work was not exclusively bargaining unit work, an argument that makes absolutely no distinction between the actions of petitioner and those of the School District.

Based upon the foregoing, we conclude that PERB erred in failing to grant the School District's motion to dismiss the improper employer practice charge based upon the union's failure to comply with the notice requirement of Education Law § 3813 (1). In view of that determination, the parties' remaining contentions are rendered academic.

MIKOLL, J. P., WHITE, YESAWICH JR. and PETERS, JJ., concur.

Adjudged that the determination is annulled, without costs, and petition granted.