◼ In the Matter of ROBERT ROMAINE, as President of Transport Workers Union, Local 106, Transit Supervisors Organization, Petitioner, v MICHAEL R. CUEVAS, as Chair of the Public Employment Relations Board, et al., Respondents. [762 NYS2d 122] —Crew III, J.P. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which dismissed an improper practice charge filed by petitioner against respondent New York City Transit Authority.

Petitioner filed a charge with respondent Public Employment Relations Board (hereinafter PERB) alleging that respondent New York City Transit Authority (hereinafter NYCTA) violated Civil Service Law § 209-a (1) (d) and committed an improper employer practice by permitting Station Supervisors Level I (hereinafter Level I supervisors) to perform work that previously had been performed exclusively by Station Supervisors Level II (hereinafter Level II supervisors). Specifically, petitioner alleged that Level I supervisors had been permitted to perform three distinct tasks that previously had been the exclusive province of Level II supervisors—namely, exercising supervisory responsibility over employees working at groups of one or more subway stations or zones, conducting revenue or "booth" audits at subway stations and conducting investigations with regard to passenger accidents and operational and/or mechanical problems with subway turnstiles and gates.

At the conclusion of the administrative hearing that followed, the Administrative Law Judge (hereinafter ALJ) concluded that NYCTA indeed had violated Civil Service Law § 209-a (1) (d) with regard to the assignment of zone supervision duties to Level I supervisors and ordered NYCTA to cease and desist such practice. As to the issue of booth audits and investigations, however, the ALJ found that NYCTA had failed to establish that such tasks had been performed exclusively by Level II supervisors and, hence, found no further violation. Petitioner and NYCTA filed exceptions to the ALJ's decision and, upon review, PERB reversed such decision in part, concluding that petitioner had failed to establish exclusivity with regard to the task of zone supervision. Petitioner thereafter commenced this proceeding pursuant to CPLR article 78 seeking to annul PERB's determination and, upon stipulation of the parties, Supreme Court transferred the proceeding to this Court.

In reviewing the underlying determination, it is not this

Court's function to weigh the evidence or assess the credibility of the testimony presented (*see Matter of De Vito v Kinsella,* 234 AD2d 640, 642 [1996]). Rather, our inquiry is limited to whether PERB's determination is supported by substantial evidence which, in turn, depends upon whether there exists a rational basis in the record as a whole to support the findings upon which such determination is based (*see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd.,* 301 AD2d 946, 947 [2003]). To establish a violation of Civil Service Law § 209-a (1) (d), it must be shown that the work in question had been performed by unit employees exclusively and, further, that the reassigned tasks were substantially similar to those previously performed by unit employees (*see Matter of State of New York Dept. of Correctional Servs. v Kinsella,* 220 AD2d 19, 22 [1996]). Notably, petitioner bears the burden of demonstrating exclusivity (*see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO [County of Erie],* 28 PERB ¶ 3053, 3125 [1995]). Based upon our review of the record as a whole, we cannot say that petitioner met that burden here.

Turning first to the issue of zone supervision, the testimony offered by NYCTA's witnesses, if credited, provides substantial evidence to support PERB's findings that this particular task had not been performed exclusively by Level II supervisors. Although conceding that Level I supervisors were not responsible for zone supervision, both Charles Glasgow, NYCTA's director of labor relations for stations and metro card operations, and Vivian Campbell, a superintendent for NYCTA, testified that there was significant overlap between the tasks performed by Level I and Level II supervisors, with each essentially performing the same functions.* Indeed, Glasgow stated that the primary difference between the two levels was that Level II supervisors were trained for management positions in addition to the supervisory duties that they shared in common with their Level I counterparts. Although Arlene Brown, a NYCTA Level II supervisor, offered testimony to the contrary, this presented a credibility issue for PERB to resolve. To the extent that petitioner contends that the respective job descriptions for Level I and Level II supervisors create a "discernable boundary" around the task of zone supervision, we need note only that

---

* This significant overlap, in our view, goes beyond sporadic episodes of Level I supervisors "helping out" Level II supervisors and, hence, negates any claim of exclusivity (*compare Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, Erie County Local 815, Erie County White Collar Empls. Unit [County of Erie],* 30 PERB ¶ 3017 [1997]).

it is the actual duties of Level I and Level II supervisors, not their written job descriptions, that determine whether exclusivity exists (*see Matter of New York State Nurses Assn. [County of Westchester]*, 31 PERB ¶ 3033, 3071-3072 [1998]).

Petitioner next contends that PERB erred in determining that booth audits were not performed exclusively by Level II supervisors. Again, we cannot agree. A booth audit consists of an accounting of the moneys and fare media in the station booth and requires keys to operate the booth turnstiles and computer. Although Brown testified that such keys were issued to, and audits were performed by, Level II supervisors only, Campbell testified that Level I supervisors had been issued such keys as early as 1998. Additionally, Glasgow testified that it was not uncommon for Level I supervisors to perform booth audits, and he documented at least 40 instances of this occurring, with some audits dating back to 1999. In light of such testimony, PERB could rationally conclude that booth audits had not been performed exclusively by Level II supervisors.

We reach a similar conclusion regarding the task of investigating customer accidents and mechanical and operational problems. Although Brown again testified that such tasks had been performed exclusively by Level II supervisors since the reorganization of NYCTA in 1985, Glasgow testified that Level I supervisors had been conducting such investigations since at least 1997. Campbell provided similar testimony on this point, stating that it was not at all unusual for Level I supervisors to perform these investigations and that their duties in this regard "went back as far as the department." Crediting such testimony, PERB could (and did) rationally conclude that the cited investigations did not fall within the exclusive domain of Level II supervisors.

To be sure, the record contains evidence that could support a finding of exclusivity with regard to each of the disputed tasks. Such evidence, however, does not in any way diminish or negate the fact that there also is substantial evidence in the record as a whole to support PERB's determination (*see Matter of Egan v Newman*, 92 AD2d 1007 [1983]). As the findings made by PERB in this regard indeed are rational, its determination dismissing the improper practice charge is confirmed.

Peters, Spain, Lahtinen and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.