■ In the Matter of MANHASSET UNION FREE SCHOOL DISTRICT, Petitioner, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents. [877 NYS2d 497]—

Rose, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which held that petitioner violated Civil Service Law § 209-a (1) (d) by transferring unit work to outside contractors.

When petitioner proposed to outsource all student bus transportation to private contractors, respondent Manhasset Educational Support Personnel Association (hereinafter MESPA), the bargaining representative for petitioner's bus drivers and vehicle maintenance personnel, objected and the parties

engaged in collective bargaining. In April 2005, negotiations reached an impasse and petitioner awarded private contracts for the transportation of all students. Citing this unilateral outsourcing of unit work, MESPA filed a notice of claim and then an improper practice charge with respondent Public Employment Relations Board (hereinafter PERB). Following a hearing, an Administrative Law Judge found that petitioner's actions violated its collective bargaining obligations (*see* Civil Service Law § 209-a [1] [d]). Upon administrative appeal, PERB upheld that determination, ordered petitioner to end the outsourcing and directed that the affected unit employees be reimbursed for lost wages and benefits. Petitioner then commenced this CPLR article 78 proceeding to annul PERB's determination, and respondents each counterclaimed to enforce PERB's order. The matter was transferred to this Court pursuant to CPLR 7804 (g).

Initially, as a condition precedent to the filing of this improper practice charge, we require a timely notice of claim pursuant to Education Law § 3813 (1) (*see Matter of Novillo v Board of Educ. of Madison Cent. School Dist.*, 17 AD3d 907, 910 n [2005], *lv denied* 5 NY3d 714 [2005]; *Matter of Board of Educ. of Union-Endicott Cent. School Dist. v New York State Pub. Empl. Relations Bd.*, 250 AD2d 82, 85 [1998], *lv denied* 93 NY2d 805 [1999]; *Matter of Deposit Cent. School Dist. v Public Empl. Relations Bd.*, 214 AD2d 288, 292 [1995], *lv dismissed and denied* 88 NY2d 866 [1996]), and the record here supports PERB's conclusion that MESPA's notice of claim was timely. Contrary to petitioner's contention, MESPA's claim did not arise in February 2005 when petitioner solicited bids for outsourcing. Rather, MESPA's damages were uncertain in February because petitioner had previously solicited such bids without awarding any contracts and, most importantly, petitioner and MESPA continued to negotiate and did not reach impasse until April 2005. Accordingly, MESPA's claim arose in April 2005, when petitioner actually awarded the private contracts, because that was when its damages had "become certain and ascertainable" (*Matter of Board of Educ. of Union-Endicott Cent. School Dist. v New York State Pub. Empl. Relations Bd.*, 250 AD2d at 85 [internal quotation marks and citation omitted]). As a result, MESPA's filing of its notice of claim in June 2005 was within the three-month period specified in Education Law § 3813 (1).

Turning to the question of whether petitioner engaged in an improper practice by unilaterally outsourcing transportation of its public school students, we begin by noting that "[t]o establish a violation of Civil Service Law § 209-a (1) (d), it must be

shown that the work in question had been performed by unit employees exclusively" (*Matter of Romaine v Cuevas*, 305 AD2d 968, 969 [2003]; *see Matter of Chenango Forks Teachers Assn., NYSUT, AFT, AFL-CIO, Local 2561 [Chenango Forks Cent. School Dist.]*, 40 PERB ¶ 3012 [2007]). PERB generally determines whether the reassigned work was exclusive to the unit by asking whether a discernable boundary can be drawn around the work performed by the unit employees. Petitioner criticizes PERB's determination here for failing to use its "core components" test for the existence of a discernable boundary (*see e.g. Matter of Correction Officers Benevolent Assn. of Rockland County [County of Rockland]*, 37 PERB ¶ 3032 [2004]) and, instead, reverting to its former "past practice" analysis (*see e.g. Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO, Nassau Local 830 [County of Nassau]*, 24 PERB ¶ 3029 [1991]). In its determination, PERB acknowledged that its analysis of improper practice charges has changed since the introduction of the concept of "core components" in *Matter of New York State Nurses Assn. (County of Westchester)* (31 PERB ¶ 3034 [1998]). Beginning with *Matter of Chenango Forks Teachers Assn., NYSUT, AFT, AFL-CIO, Local 2561 (Chenango Forks Cent. School Dist.)* (40 PERB ¶ 3012 [2007], *supra*), PERB found that concept too limiting and expressly returned to its earlier "past practice" approach, which focuses on whether the employer's " 'practice was unequivocal and was continued uninterrupted for a period of time under the circumstances to create a reasonable expectation among the affected unit employees that the [practice] would continue' " (*id.*, quoting *Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO, Nassau Local 830 [County of Nassau]*, 24 PERB ¶ 3029 [1991], *supra*; *see Matter of Kingston Police Benevolent Assn., Inc. [City of Kingston]*, 40 PERB ¶ 3015 [2007]). Such a practice establishes the exclusivity of the unit's work. To the extent that PERB's use of this analysis here departs from certain of its precedents, we cannot find it to be arbitrary or irrational because "PERB provided a detailed explanation for its decision to depart from its previous analysis . . . [and we grant it] the deference to which it is entitled in the realm of improper labor practices" (*Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v Cuevas*, 276 AD2d 184, 191 [2000], *lv denied* 96 NY2d 711 [2001]).

Next, mindful that "[t]he scope of review of a PERB determination 'is limited to whether [it] is supported by substantial evidence which, in turn, depends upon whether there exists a rational basis in the record as a whole to support the findings upon which such determination is based' " (*Matter of Civil Serv.*

*Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd.*, 2 AD3d 1197, 1198 [2003], quoting *Matter of Romaine v Cuevas*, 305 AD2d at 969; *see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd.*, 301 AD2d 946, 947 [2003]), we turn to PERB's application of its "past practice" analysis to the facts here. In its analysis, PERB found a reasonable expectation by unit employees that they would continue to transport nearly all of petitioner's public school students. This finding is supported by evidence in the record that unit employees had transported all but approximately 100 of the more than 2,100 public school students prior to 2001, petitioner announced in 2001 that it would cease private transportation of public school students because of the dissatisfaction of the parents of the privately transported students and, in the three years that followed, the number of privately transported public school students had decreased to 10 students. Since the practice of having unit employees transport virtually all public school students had continued uninterrupted for over three years, PERB's finding that there was a qualifying past practice that was improperly terminated by petitioner has a rational basis and must be upheld (*see Matter of Hudson Val. Community Coll. Non-Instructional Empls. Union [Hudson Val. Community Coll.]*, 40 PERB ¶ 4591 [2007]; *Matter of Rochester Police Locust Club, Inc. [City of Rochester]*, 21 PERB ¶ 3040 [1988]).*

We also find a rational basis for PERB's finding that petitioner's substitute bus drivers come within MESPA's bargaining unit, since they were treated like unit employees in a sufficient number of respects (*see Matter of Broome-Tioga BOCES Teachers Assn., NYSUT, AFT [Broome-Tioga BOCES]*, 31 PERB ¶ 4016 [1998]; *Matter of Hammondsport Non-Teaching Personnel Org. [Hammondsport Cent. School Dist.]*, 29 PERB ¶ 3063 [1996]).

We do agree with petitioner, however, that PERB's remedial order, which requires petitioner to cease transferring the unit work of transporting public school students to nonunit employees, should be modified. While "a remedy fashioned by PERB

---

* Contrary to petitioner's argument, PERB rationally distinguished the present case from *Matter of Indian Riv. School Unit, Jefferson County Local 823, Civ. Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO (Indian Riv. Cent. School Dist.)* (20 PERB ¶ 3047 [1987]). In *Indian River*, unlike here, the school district's utilization of private contractors had been steadily increasing and reached one third of its bus routes when it decided to fully outsource student transportation. Accordingly, PERB found that the unit work had not been exclusive and, thus, the district's unilateral outsourcing was not an improper practice.

for an improper practice 'should be upheld if reasonable' " (*Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd.*, 2 AD3d at 1198, quoting *Matter of State of N.Y., Governor's Off. of Empl. Relations v Public Empl. Relations Bd.*, 116 AD2d 827, 830 [1986]), "[i]t is for the courts to examine the reasonable application of PERB's remedies" (*Matter of Town of Clay v Helsby*, 51 AD2d 200, 205 [1976]; *see* Civil Service Law § 213 [d]). PERB's order requires petitioner to restore the personnel and facilities of its former transportation department. Because petitioner has already sold its buses and leased its garage, compliance with the order may require taxpayer approval (*see* Education Law § 416; Local Finance Law § 37.00), which may or may not be forthcoming, and could be delayed by petitioner's contractual obligations. Under these unique circumstances, we find that enforcement of the current order is unreasonable (*see Matter of Buffalo Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.*, 8 AD3d 958, 958 [2004]; *Matter of Town of Clay v Helsby*, 51 AD2d at 208; *Matter of Germantown Cent. School Dist. v Public Empl. Relations Bd. of State of N.Y.*, 205 AD2d 961, 963 [1994]), and we remit the matter to PERB to fashion a remedy that will allow for the contingencies that could prevent petitioner's compliance (*see e.g. Matter of Chautauqua County Empls. Unit 6300, Chautauqua County Local 807, CSEA, Inc., Local 1000, AFSCME, AFL-CIO [County of Chautauqua]*, 21 PERB ¶ 4588 [1988]).

Cardona, P.J., Kane and Stein, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as unconditionally ordered petitioner to cease transferring unit work to nonunit employees; respondents' counterclaim denied and matter remitted to respondent Public Employment Relations Board for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.