■ In the Matter of COUNCIL OF SCHOOL SUPERVISORS AND ADMINISTRATORS, LOCAL 1, AMERICAN FEDERATION OF SCHOOL ADMINISTRATORS, AFL-CIO, by Its President ERNEST LOGAN, Respondent, v NEW YORK CITY DEPARTMENT OF EDUCATION et al., Appellants. [929 NYS2d 578]—

Petitioner, Council of School Supervisors and Administrators (CSA), Local 1, American Federation of School Administrators, AFL-CIO, by its President Ernest Logan, is a labor organization certified pursuant to article 14 of the Civil Service Law as the bargaining representative for school principals, assistant principals, and other supervisors and administrators in the City's school system. Respondents include the City by the Mayor (City), and the New York City Department of Education (DOE), which is a municipal agency that administers the City's public education system, and is the employer of the CSA-represented employees.

In early 2008, the City enacted a citywide plan applicable to all agencies to reduce the number of parking permits issued to municipal workers for parking on city streets, and to ensure the proper regulation of such permits by the City Department of Transportation (DOT). The reason for the plan was to reduce congestion and pollution on the city streets, and to encourage the use of public transportation. Prior to that time, parking permits were distributed by each city entity based on demand rather than corresponding to parking spaces actually available.

For the 2007-2008 school year, DOE issued more than 63,000 permits for just 25,000 spaces available to DOE employees. The permits could be used in any of the 10,000 parking spaces designated by DOT for DOE use on the city streets, or in the 15,000 spaces on DOE premises. The permits made no distinction between on-street parking or parking on DOE premises. Nor were the permits site-specific. Any CSA-represented employee who requested a parking permit for use in spaces reserved for DOE employees was granted one, although having the permit did not guarantee a parking space.

Upon application of the citywide plan, the DOE (as well as other agencies) was restricted to 10,000 permits for the corresponding number of available on-street spaces, and was no longer authorized to issue the on-street permits on demand (as distinguished from the permits it may still issue for parking spaces on DOE property). Instead, the permits issued by DOT for on-street parking are site-specific, and therefore issued to personnel working at a particular site.* The number of DOE parking permits was thereby substantially reduced, and DOE denied permits to many CSA-represented employees who had previously held them.

In August 2008, CSA filed a grievance against the DOE, arguing that any reduction in the parking permits issued to CSA members violated a provision of the collective bargaining agreement between DOE and CSA that dealt with conditions of employment. The CSA contended that DOE could not make such a change without appropriate prior negotiation with CSA.

The grievance went to arbitration, and following a hearing, an arbitration award was entered against the DOE and the City. The arbitrator found that the permits policy change was a proper subject of bargaining as it "constituted a significant and adverse alteration of the bargaining unit members' working conditions." It directed DOE to "return[ ] all parking permits previously held by CSA bargaining unit members" in the 2007-2008 school year until negotiations could be conducted with CSA over the proposed reductions.

In September 2009, the CSA commenced this proceeding pursuant to CPLR article 75 to confirm the arbitration award. The City respondents cross-petitioned for an order to vacate arguing that: (1) it violated strong public policy; (2) the arbitrator vastly exceeded his authority; and (3) the arbitration award was irrational.

By order and judgment entered August 4, 2010, the court granted the petition, confirmed the award in CSA's favor, and denied the City's cross petition to vacate the award. This was error.

As a threshold matter, we reiterate well-settled law that an arbitration award will be vacated only where "it is violative of a strong public policy, or is totally irrational, or exceeds a specifically enumerated limitation on [the arbitrator's] power" (*Matter of Brown & Williamson Tobacco Corp. v Chesley*, 7 AD3d

---

* However, the DOT issued an additional 650 permits to the DOE for teachers and staff whose work required them to visit multiple sites during their workdays.

368, 372 [2004] [internal quotation marks and citations omitted]). Here, however, we agree with respondents that the award should be vacated on all of the above-mentioned grounds.

It is undisputed that the power to issue parking permits rests in the exclusive control of the City. Respondent City by Mayor Bloomberg, and nonparty DOT have the power under NY Constitution, article IX, § 2 (a) and (c), state law (see Vehicle and Traffic Law §§ 1641, 1642) and local laws (see Municipal Home Rule Law § 10 [1] [ii] [a] [6]; Administrative Code of City of NY § 24-801 et seq.) to regulate traffic in the City streets, as well as parking. DOT is the preeminent City agency responsible for regulating traffic, including parking, within the City (see Santiago v Riccio, 170 AD2d 340 [1991], appeal dismissed 77 NY2d 989 [1991]).

In this case, the award directs DOE to issue permits in such manner and by such method that it directly overrides the authority of DOT. Indeed, it directs DOE to exercise a legal authority it does not possess. This not only means the arbitrator exceeded his authority, but did so in an entirely irrational way. Moreover, Supreme Court erred in attempting to soften or justify this irrational overreach.

Specifically, the court found that the award had no direct bearing on DOT's authority to regulate on-street parking because the number of parking permits that DOT allocated to DOE exceeded the number of CSA members affected in this proceeding. In other words, the arbitrator had decided only "the issue of entitlement" as to the 10,000 on-street parking permits assigned to DOE. Further, the court noted that the arbitrator had heard testimony that DOE's practice of issuing parking permits was a condition of employment. Thus, the court denied the City's cross petition because it found that the City had failed to show how the award was inconsistent with the terms of the collective bargaining agreement which required negotiation of changes in the conditions of employment.

The foregoing findings miss the point. First, it is irrelevant that the award is consistent with the collective bargaining agreement. The agreement was forged between CSA and DOE. DOT was not a party to the collective bargaining agreement, and cannot be bound by it. DOT did not agree to issue parking permits to any CSA member who demanded a permit. Nor did DOT expressly agree to the arrangement in place prior to the installation of the citywide plan, namely issuing more permits than available corresponding spaces. Nor was DOT a party to the arbitration. Yet, the issuance of on-street parking permits lies in the exclusive control of DOT not DOE. Thus, either DOE has

been directed to negotiate a "perk" it cannot legally deliver, or we would have to accept the clearly unsupportable position that the arbitration award de facto transferred the authority to regulate traffic and parking in the City of New York to DOE, certain City employees and their collective bargaining representatives.

Moreover, we reject the court's attempt to justify the arbitrator's overreaching by holding that the award did not infringe on the City's and DOT's authority to regulate traffic and parking because DOT issued 10,000 on-street permits to DOE, and DOE is simply allocating them when it reinstates them for certain CSA members. This reasoning simply further underscores the irrationality of the award.

At the heart of the citywide plan, and its objective to reduce congestion and pollution, are 10,000 *site-specific* permits. That is, current permits issued by DOT, unlike the permits issued in prior years to DOE, are regulated by issuing them to personnel at a specific physical location (either a school or a DOE facility) adjacent to or near the on-street parking spaces allocated to DOE.

According to the affidavit of DOE's director of special projects, this means that parking permits can be issued only to personnel working in schools or DOE facilities that have on-street parking spaces assigned to the facility by DOT. According to DOE, approximately 300 schools in the city do not have any on-street or off-street parking spaces available. Thus, while a number of CSA members previously received permits even though they worked at such schools, the DOE further affirms that it is no longer "possible or practical for DOE to give all DOT issued permits to CSA union members, especially to those who are not assigned to schools with on-street parking."

This is entirely consistent with DOT's determination that regulation is necessary to reduce congestion and pollution. The objectives of reducing congestion, pollution and the City's carbon footprint, and promoting the use of public transportation are all city initiatives encompassed in the City Charter and the Administrative Code. To the extent that the award essentially annulled the judgment of the City as to those objectives of the citywide plan, we find that it also violated public policy. Concur—Gonzalez, P.J., Tom, Friedman, Catterson and Richter, JJ. **[Prior Case History: 2010 NY Slip Op 31664(U).]**