(April 10, 2012)

■ JAY ABRAMS et al., Respondents, v SUZANNE BERELSON, Appellant. [942 NYS2d 132]—

In an action to recover damages for personal injuries, etc., the defendant appeals, as limited by her brief, from so much of an order of the Supreme Court, Richmond County (Maltese, J.), dated August 23, 2010, as granted the plaintiffs' motion, denominated as one pursuant to CPLR 5015 (a) (2) to vacate an order of the same court (Ponterio, J.), dated August 30, 2000, granting her motion for summary judgment dismissing the complaint, but which was, in actuality, a motion pursuant to CPLR 2221 for leave to renew the plaintiffs' opposition to her motion for summary judgment dismissing the complaint, and, upon renewal, in effect, vacated the order dated August 30, 2000, and thereupon, denied her motion for summary judgment dismissing the complaint.

Ordered that the order dated August 23, 2010, is reversed insofar as appealed from, on the facts and in the exercise of discretion, with costs, the plaintiffs' motion pursuant to CPLR 2221 is denied, and the order dated August 30, 2000, is reinstated.

The defendant hired the plaintiff Jay Abrams (hereinafter the injured plaintiff) and his coworker, Michael Torres, through their employer, to clean the carpets of a house that she owned and that, until her mother's death two months earlier, had been occupied exclusively by her mother. According to the plaintiffs, the defendant instructed the injured plaintiff and Torres that any remaining property in the house could be kept by them,

discarded as trash, or donated to charity. The plaintiffs alleged that, in the course of performing the work, Torres discovered a loaded rifle in one of the closets he was cleaning, and accidentally shot the injured plaintiff.

The injured plaintiff and his wife, suing derivatively, commenced the instant action against the defendant. The defendant then moved for summary judgment dismissing the complaint and, in support of her motion, submitted an affidavit in which she averred that she was not aware that there was a rifle in the house. At the time that the defendant's summary judgment motion was made, the plaintiffs were unable to locate Torres and, thus, could not obtain an affidavit from him regarding the circumstances surrounding the accident and his discovery of the gun. In an order dated August 30, 2000, the Supreme Court granted the motion, concluding that the defendant had met her prima facie burden and that the plaintiffs failed to raise a triable issue of fact as to actual or constructive notice. This Court affirmed the order (see *Abrams v Berelson*, 283 AD2d 597 [2001]).

More than nine years later, the plaintiffs moved, pursuant to CPLR 5015 (a) (2), to vacate the order on the ground of newly-discovered evidence, which motion was properly treated by the Supreme Court as one pursuant to CPLR 2221 for leave to renew the plaintiffs' opposition to the defendant's motion for summary judgment dismissing the complaint. In support of the motion to renew, the plaintiffs submitted, among other things, an affidavit from Torres. Torres averred that, in the course of his work at the defendant's house, he saw a box leaning against the back wall of a closet, labeled "Daisy air rifle b.b. gun," and that it was "impossible" for a person looking in the closet to fail to see the box. Torres averred that "[i]n the box, and, in plain sight, was a rifle." Notably, although Torres's affidavit was originally written to indicate that the rifle was found outside the box and leaning against it, Torres inserted handwritten changes to the affidavit to clarify that the gun was inside the box. On the basis, inter alia, of this new evidence, the Supreme Court granted the plaintiffs' motion to renew their opposition to the defendant's summary judgment motion, vacated its prior order, and denied the defendant's motion.

The Supreme Court improvidently exercised its discretion in granting the plaintiffs' motion. A motion for leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination" (CPLR 2221 [e] [2]) and "shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [3]; *see*

*Matter of Choy v Mai Ling Lai*, 91 AD3d 772 [2012]; *Barnett v Smith*, 64 AD3d 669, 670 [2009]). Under the circumstances of this case, the plaintiffs' submissions were insufficient to demonstrate a reasonable justification for failing to present the new evidence on the prior motion (*see* CPLR 2221 [e] [3]; *Mount Sinai Hosp. v Country Wide Ins. Co.*, 85 AD3d 1136 [2011]; *Lardo v Rivlab Transp. Corp.*, 46 AD3d 759, 759-760 [2007]). Many of the efforts made by the plaintiffs and other individuals to locate Torres, which are relied upon by the dissent, occurred after the defendant's motion for summary judgment was decided, and, therefore, do not constitute reasonable justification for their failure to present Torres' affidavit "on the prior motion" (CPLR 2221 [e] [3]). Moreover, the plaintiffs, who did not move to vacate the judgment until six months after locating Torres, failed to meet their "heavy burden" of showing due diligence in presenting the new evidence to the Supreme Court once it was obtained (*Andrews v New York City Hous. Auth.*, 90 AD3d 962, 963 [2011]; *see Cannistra v Gibbons*, 224 AD2d 570, 572 [1996]; *Ramsco, Inc. v Riozzi*, 210 AD2d 592, 593 [1994]; *Levitt v County of Suffolk*, 166 AD2d 421, 422-423 [1990] [plaintiff failed to proffer a sufficient explanation for the six-month delay in seeking to vacate the prior judgment]).

In any event, even if the plaintiffs had demonstrated the requisite reasonable justification, denial of the motion would have been warranted because the allegedly new facts offered would not have changed the prior determination (*see* CPLR 2221 [e] [2]; *Matter of Choy v Mai Ling Lai*, 91 AD3d 772 [2012]). "A defendant who moves for summary judgment in a premises liability case has the initial burden of making a prima facie showing that it neither created the hazardous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it" (*Bloomfield v Jericho Union Free School Dist.*, 80 AD3d 637, 638 [2011]; *see Aguirre v Paul*, 54 AD3d 302 [2008]; *Lezama v 34-15 Parsons Blvd, LLC*, 16 AD3d 560 [2005]). This Court concluded on the prior appeal that the defendant met her prima facie burden of demonstrating that she did not create the dangerous condition, and did not have actual or constructive notice of the presence of the rifle in the closet (*see Abrams v Berelson*, 283 AD2d at 598). Torres' affidavit would not have changed the result of the summary judgment motion because, contrary to the plaintiffs' contention, it did not raise a triable issue of fact as to the defendant's constructive notice of a dangerous condition.

A defendant has constructive notice of a dangerous condition when the condition "is visible and apparent, and has existed for

a sufficient length of time before the accident that it could have been discovered and corrected" (*Dennehy-Murphy v Nor-Topia Serv. Ctr., Inc.,* 61 AD3d 629, 629 [2009]; *see Gordon v American Museum of Natural History,* 67 NY2d 836 [1986]; *Larsen v Congregation B'Nai Jeshurun of Staten Is.,* 29 AD3d 643 [2006]). Although the presence of a *loaded* gun may constitute a dangerous condition, under the circumstances of this case, the mere presence of a gun in the defendant's house was not sufficient to establish, as a matter of law, the defendant's liability founded on the presence of a dangerous condition, absent proof that the defendant had actual or constructive knowledge that the gun was loaded (*see Yusko v Remizon,* 280 App Div 637, 639 [1952]; *Napiearlski v Pickering,* 278 App Div 456, 457-458 [1951]). Thus, to establish the defendant's liability, the plaintiffs ultimately would be required to show not only that the defendant had constructive notice of the presence of the rifle, but constructive notice that the rifle was loaded (*see Yusko v Remizon,* 280 App Div at 639; *see also Napiearlski v Pickering,* 278 App Div at 457-458).

The plaintiff failed to raise a triable issue of fact in that regard. Torres' affidavit merely established that there was a box in the closet labeled "Daisy air rifle B.B. gun," which contained a .22 caliber rifle, and that one could not look into the closet without noticing the box. Even if Torres's affidavit, along with the defendant's deposition testimony that, when she was a child, her father owned a gun which she knew about, was sufficient to establish a triable issue of fact as to the defendant's constructive notice that the box contained a rifle, there was no evidence that the defendant knew or had any reason to know that the rifle in the box was loaded (*see Yusko v Remizon,* 280 App Div at 639; *cf. Gill v Falkowski,* 69 AD2d 934, 935 [1979]). Further, under the circumstances of this case, involving the injured plaintiff and Torres, adults who were no less able to assess and appreciate the danger of a weapon than the defendant, and the need to treat a weapon with the utmost of care, we decline to impose upon the defendant a duty to personally inspect the contents of the box to assess whether any weapon contained therein was loaded so that she could so warn the injured plaintiff and his co-worker (*see Yusko v Remizon,* 280 App Div at 639).

The parties' remaining contentions either are without merit or need not be reached in light of our determination.

Accordingly, the plaintiffs' motion pursuant to CPLR 2221 should have been denied. Skelos, J.P., Lott and Miller, JJ., concur.

Dickerson, J., dissents, and votes to affirm the order insofar as appealed from, with the following memorandum in which Leventhal, J., concurs: The defendant's parents owned a house on Staten Island for many years. The defendant lived with her parents in the premises from approximately 1962 through 1977. The defendant's father died in 1980. The defendant's mother continued to reside in the premises. In 1993, title to the house was conveyed to the defendant, subject to a life estate held by her mother. The defendant's mother died in September 1997.

Following her mother's death, the defendant hired All Boro Carpet Cleaning (hereinafter All Boro) to clean the carpets in the house in order to prepare the house to be rented. The plaintiff Jay Abrams (hereinafter the injured plaintiff) and his coworker Michael Torres worked for All Boro. On November 3, 1997, the injured plaintiff and Torres went to the defendant's house to perform cleaning work. According to the plaintiffs, the defendant instructed the injured plaintiff and Torres to move the personal property within the house to the kitchen so the carpets could be cleaned. She further instructed the injured plaintiff that, if he came across any items that he wanted, he should bring them to her attention, and she would let him know whether he could keep them.

The injured plaintiff and Torres began cleaning out the house, working in separate rooms. According to the plaintiffs, Torres came across a rifle in a closet, and when he picked up the rifle, it discharged. The bullet struck the injured plaintiff in the jaw, severely injuring him.

Torres was initially arrested, but he was released and the charges were dropped when the injured plaintiff confirmed that the shooting was accidental. However, after his release, Torres could not be located.

The injured plaintiff and his wife, suing derivatively, commenced this action against the defendant as homeowner. The defendant moved for summary judgment dismissing the complaint, contending, inter alia, that there was no evidence that she had actual or constructive notice of the presence of the rifle in the house, or that it was loaded. In an order dated August 30, 2000, the Supreme Court granted the defendant's motion. The Supreme Court found that the plaintiffs could not establish a prima facie case as to notice, largely because Torres could not be produced to testify concerning where the rifle was discovered and whether it was visible and apparent. Additionally, the plaintiffs could offer no evidence as to how long the rifle had been present in the house prior to the shooting. This Court affirmed the order granting the defendant summary judg-

ment dismissing the complaint, concluding that "[t]he defendant established that she did not have actual or constructive notice of the presence of the rifle in the closet. In response, the plaintiffs only speculated that the defendant had notice of the rifle" (*Abrams v Berelson*, 283 AD2d 597, 598 [2001]).

In 2010, by order to show cause, the plaintiffs moved pursuant to CPLR 5015 (a) (2) to vacate the order granting the defendant summary judgment dismissing the complaint based on newly-discovered evidence. Specifically, the plaintiffs stated that they had finally managed to locate Torres and had obtained an affidavit from him. Additionally, contrary to earlier indications from the New York City Police Department that the rifle had been destroyed, the plaintiffs discovered that the rifle was, in fact, still in police possession. The defendant opposed the motion, arguing, among other things, that the plaintiffs failed to demonstrate that they had exercised due diligence in attempting to obtain this evidence when her motion for summary judgment was pending before the Supreme Court. Furthermore, the defendant asserted that, even if the affidavit obtained by the plaintiffs from Torres had been before the Supreme Court on the original motion, its contents would have been insufficient to defeat her summary judgment motion.

The Supreme Court properly treated the plaintiffs' motion as one for leave to renew pursuant to CPLR 2221 (e). That court · granted the plaintiffs' motion, determining that the plaintiffs established a reasonable justification for their failure to present the new facts which were not originally offered in opposition to the defendant's summary judgment motion, and that the new facts would have changed the determination on that motion. I agree with the Supreme Court's determination, and, accordingly, I respectfully dissent.

"Pursuant to CPLR 2221 (e), a motion for leave to renew 'shall be based upon new facts not offered on the prior motion that would change the prior determination . . . and . . . shall contain reasonable justification for the failure to present such facts on the prior motion' " (*Andrews v New York City Hous. Auth.*, 90 AD3d 962, 963 [2011], quoting CPLR 2221 [e] [2], [3]). "[O]n [a] postappeal motion [to renew] the [movant] bears a heavy burden of showing due diligence in presenting the new evidence to the Supreme Court in order to imbue the appellate decision with a degree of certainty" (*Andrews v New York City Hous. Auth.*, 90 AD3d at 963 [internal quotation marks omitted]; *see Estate of Essig v 5670 58 St. Holding Corp.*, 66 AD3d 822, 823 [2009]; *Levitt v County of Suffolk*, 166 AD2d 421, 423 [1990]). " 'A motion for leave to renew is addressed to the sound

discretion of the court' " (*Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp.*, 64 AD3d 85, 100 [2009], quoting *Matheus v Weiss*, 20 AD3d 454, 454-455 [2005]; *see Lardo v Rivlab Transp. Corp.*, 46 AD3d 759, 759 [2007]; *Mi Ja Lee v Glicksman*, 14 AD3d 669, 670 [2005]).

Torres's availability and testimony constituted new facts not offered on the prior motion within the meaning of CPLR 2221 (e) (2). After essentially disappearing for 12 years following the incident, Torres, whose testimony the plaintiffs and the Supreme Court deemed crucial to the case, resurfaced in 2009, and the plaintiffs made their motion within approximately six months. Under these circumstances, six months did not constitute an unreasonable delay such that this evidence could not be deemed to be "new facts" within the meaning of CPLR 2221 (e) (2) at the time the motion was made.

Contrary to the plaintiffs' contentions, under the circumstances of this case, I conclude that the other evidence on which their motion was premised, specifically the discovery that the rifle had not been destroyed and was available, and the testimony of several other witnesses, did not constitute "new facts" within the meaning of CPLR 2221 (e) (2).

With regard to whether the plaintiffs demonstrated a reasonable justification for their failure to present Torres's testimony in opposition to the defendant's motion in 2000, "[w]hat constitutes a 'reasonable justification' is within the Supreme Court's discretion" (*Dervisevic v Dervisevic*, 89 AD3d 785, 787 [2011]; *see Rowe v NYCPD*, 85 AD3d 1001, 1003 [2011]). Here, it is undisputed that Torres deliberately went into hiding for years following the shooting, and that the plaintiffs could not locate him. The plaintiffs proffer evidence concerning some of the unsuccessful efforts undertaken to locate Torres, including the personal efforts of the injured plaintiff's wife, the efforts of the plaintiffs' prior attorney, and the affidavit of a mutual friend who attempted to locate Torres for the plaintiffs. The plaintiffs also rely on Torres's affidavit, in which he acknowledges going into hiding and describes some of the steps he took to conceal his whereabouts. Cumulatively, this evidence was sufficient to demonstrate that the plaintiffs exercised due diligence in attempting to locate Torres, but to no avail. The defendant's protestations that the plaintiffs failed to adequately demonstrate that Torres's availability could not be secured through the exercise of due diligence are without merit and belied by the record. Under the circumstances of this case, and based on the applicable standard, the plaintiffs were not required to produce an even more detailed account of their efforts over the years to

discover Torres's whereabouts. Accordingly, I conclude that the Supreme Court providently exercised its discretion in concluding that the plaintiffs established a reasonable justification for their failure to present Torres's affidavit in opposition to the defendant's motion for summary judgment dismissing the complaint in 2000.

Thus, the remaining question is whether the proffered evidence "would change the prior determination" (CPLR 2221 [e] [2]) granting the defendant's motion for summary judgment dismissing the complaint.

"A party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence to demonstrate the absence of any material issues of fact" (*Napolitano v Suffolk County Dept. of Pub. Works*, 65 AD3d 676, 677 [2009]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Zuckerman v City of New York*, 49 NY2d 557 [1980]). "The failure to make such a prima facia showing requires the denial of the motion regardless of the sufficiency of the opposing papers" (*Napolitano v Suffolk County Dept. of Pub. Works*, 65 AD3d at 677; *see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]). If the movant succeeds in making a prima facie showing, the burden then shifts to the nonmoving party to come forward with sufficient evidence to raise a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Yax v Development Team, Inc.*, 67 AD3d 1003, 1004 [2009]). In determining a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party (*see Pearson v Dix McBride, LLC*, 63 AD3d 895, 895 [2009]).

Thus, to establish that the newly-discovered evidence "would change the prior determination" (CPLR 2221 [e] [2]), we must only conclude that the new facts would have been sufficient to raise a triable issue of fact in opposition to the defendant's motion.

" 'A property owner has a duty to maintain [its] property in a reasonably safe condition' " (*Surujnaraine v Valley Stream Cent. High School Dist.*, 88 AD3d 866, 866 [2011], quoting *Katz v Westchester County Healthcare Corp.*, 82 AD3d 712, 713 [2011]). " 'However, a property owner has no duty to protect or warn against an open and obvious condition, which as a matter of law is not inherently dangerous' " (*Surujnaraine v Valley Stream Cent. High School Dist.*, 88 AD3d at 866, quoting *Katz v Westchester County Healthcare Corp.*, 82 AD3d at 713; *see Neiderbach v 7-Eleven, Inc.*, 56 AD3d 632, 633 [2008]; *Giambruno v Wilbur F. Breslin Dev. Corp.*, 56 AD3d 520, 521 [2008]; *Cupo v Karfunkel*, 1 AD3d 48, 51 [2003]).

"A defendant who moves for summary judgment in a premises liability case has the initial burden of making a prima facie showing that it neither created the hazardous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it" (*Bloomfield v Jericho Union Free School Dist.*, 80 AD3d 637, 638 [2011]; *see Aguirre v Paul*, 54 AD3d 302, 303 [2008]; *Lezama v 34-15 Parsons Blvd, LLC*, 16 AD3d 560, 560 [2005]). Thus, to prevail on her motion, the defendant had to eliminate all triable issues of fact as to whether the loaded .22 caliber rifle, under the circumstances presented here, constituted a dangerous condition, and whether she created or had actual or constructive notice thereof. Before considering whether the defendant created or had actual or constructive notice of a hazardous or dangerous condition on her premises, it must be determined whether a hazardous or dangerous condition in fact existed.

" '[W]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury' " (*Surujnaraine v Valley Stream Cent. High School Dist.*, 88 AD3d at 867, quoting *Trincere v County of Suffolk*, 90 NY2d 976, 977 [1997]).

The majority, relying on an Appellate Division, Third Department, case decided in 1952 (*see Yusko v Remizon*, 280 App Div 637 [1952]), and an Appellate Division, Fourth Department, case decided in 1951 (*see Napiearlski v Pickering*, 278 App Div 456 [1951]), concludes that, under the circumstances presented here, the mere presence of a gun in the defendant's house did not constitute negligence. I do not necessarily disagree with the statement that "[t]he mere presence of a gun in one's house is not negligence" (*Yusko v Remizon*, 280 App Div at 639), as a general, and limited, proposition. I depart from my colleagues in the majority, however, in concluding that, here, because of the manner in which the loaded rifle was stored, and based on the instructions offered to the injured plaintiff and Torres by the defendant, under the " 'peculiar facts and circumstances of [this] case' " (*Surujnaraine v Valley Stream Cent. High School Dist.*, 88 AD3d at 867, quoting *Trincere v County of Suffolk*, 90 NY2d at 977), the loaded rifle constituted a hazardous condition.

Torres's affidavit states that he and the injured plaintiff were working in separate rooms at the defendant's house. The defendant had informed the injured plaintiff that she had "gone through the house and removed everything she wanted." She had informed Torres and the injured plaintiff that they "could

take anything that remained, but that [they] should notify her about it if [they] did so." Torres and the injured plaintiff were in the process of moving everything from the house into the kitchen so that they could clean the carpets. Torres discovered a box leaning against the back wall of a closet. The box was labeled "Daisy air rifle b.b. gun." "In the box and in pla[i]n sight," was a .22 caliber rifle. However, Torres "thought it was the b.b. gun." As the majority notes, it appears that Torres amended his typewritten affidavit such that, instead of indicating that the rifle was "[o]utside the box and leaning against it," the affidavit states that the rifle was "[i]n the box and in pla[i]n sight." Torres stated that it would be impossible for anyone who looked into the closet to fail to see the rifle. Torres speculated that whoever had removed clothing from the closet "had clearly left the box and the gun intentionally." Torres picked up the rifle, "because it clearly could not be left where it was when the house was being cleaned out for a sale." Torres further stated in his deposition that when he picked up the rifle, it discharged. There can be no dispute that the rifle was, in fact, loaded.

Viewing the evidence in the light most favorable to the nonmoving plaintiffs (see Pearson v Dix McBride, LLC, 63 AD3d at 895), I conclude, based on the peculiar facts and circumstances of this case (see Trincere v County of Suffolk, 90 NY2d at 977; Surujnaraine v Valley Stream Cent. High School Dist., 88 AD3d at 867), that the loaded rifle, out in the open and in plain sight, misleadingly left in a BB gun box, could constitute a dangerous condition sufficient to support liability against the defendant homeowner. This is particularly so in light of the defendant's invitation to the injured plaintiff and Torres to sort through all items in the house, and select among those items any they would like to keep. Indeed, in light of the fact that the rifle was misleadingly stored in or on a BB gun box, this condition could be deemed a "trap for the unwary," inasmuch as the true nature of the condition was obscured by the manner in which it presented itself (Clark v AMF Bowling Ctrs., Inc., 83 AD3d 761, 761 [2011]; see Mazzarelli v 54 Plus Realty Corp., 54 AD3d 1008, 1009 [2008]). Contrary to the defendant's contention, this case does essentially appear to "involve a rifle left out in the open, loaded and cocked."

Turning to whether the defendant created or had actual or constructive notice of the hazardous condition, the plaintiffs did not allege, and there was no evidence to support the theory, that the defendant created the hazardous condition. The defendant also denied having actual notice thereof, and the

plaintiffs, both in opposition to the original motion and on the present motion, presented no evidence to raise a triable issue of fact relevant to actual notice. Accordingly, Torres's affidavit must be examined to determine whether it "would change the prior determination" (CPLR 2221 [e] [2]) on the defendant's motion by raising a triable issue of fact relevant to the issue of constructive notice.

" 'A defendant has constructive notice of a defect when the defect is visible and apparent, and has existed for a sufficient length of time before the accident that it could have been discovered and corrected' " (*Leary v Leisure Glen Home Owners Assn., Inc.*, 82 AD3d 1169, 1170 [2011], quoting *Dennehy-Murphy v Nor-Topia Serv. Ctr., Inc.*, 61 AD3d 629, 629 [2009]; *see Gordon v American Museum of Natural History*, 67 NY2d 836 [1986]). " 'There must be some proof that the potential danger reasonably could have been neutralized and that its existence was or should have been discovered by the [landowner]' " (*Abrams v Berelson*, 283 AD2d at 598, quoting *Preston v State of New York*, 59 NY2d 997, 999 [1983]).

Again, Torres stated in his affidavit that the defendant had informed the injured plaintiff that she had "gone through the house and removed everything she wanted." Torres further stated in his affidavit that it would be impossible for anyone who looked into the closet to fail to see the rifle. He speculated that whoever had removed clothing from the closet "had clearly left the box and the gun intentionally." In addition to these new facts, in her deposition testimony which was before the Supreme Court on her original motion, the defendant testified that, following her mother's death, she had sorted through several closets in the house and packed her mother's possessions. Further, the defendant stated in her affidavit in support of her motion for summary judgment that, "[w]hen [the injured] Plaintiff was in the house cleaning the carpets, I was still in the process of cleaning out the house and 'going through' the items contained therein."

This evidence is undeniably relevant to whether the loaded rifle was "visible and apparent" (*see Gordon v American Museum of Natural History*, 67 NY2d at 837; *Leary v Leisure Glen Home Owners Assn., Inc.*, 82 AD3d at 1170; *Dennehy-Murphy v Nor-Topia Serv. Ctr., Inc.*, 61 AD3d at 629). Again, Torres stated that "[i]n the box and in pla[i]n sight, was a rifle." Furthermore, I conclude that, viewing the evidence in the light most favorable to the nonmoving plaintiffs (*see Pearson v Dix McBride, LLC*, 63 AD3d at 895), Torres's affidavit concerning the manner in which he found the rifle and the condition in

which he found it, especially coupled with the defendant's own statements concerning her activities in going through the house after her mother's death and packing up her mother's possessions, was sufficient to raise a triable issue of fact as to whether this dangerous condition " 'ha[d] existed for a sufficient length of time before the accident that it could have been discovered and corrected' " (*Leary v Leisure Glen Home Owners Assn., Inc.*, 82 AD3d at 1170, quoting *Dennehy-Murphy v Nor-Topia Serv. Ctr., Inc.*, 61 AD3d at 629; *see Gordon v American Museum of Natural History*, 67 NY2d at 837).

I do not agree with the majority that, under the particular and unique circumstances of this case, the plaintiffs were required to prove that the defendant had actual or constructive notice of the fact that the rifle was loaded. I am not convinced that this is a per se requirement regardless of the surrounding circumstances. I note that the cases on which the majority relies for this proposition were decided by the Appellate Division, Third Department (*see Yusko v Remizon*, 280 App Div 637 [1952]), and the Appellate Division, Fourth Department (*see Napiearlski v Pickering*, 278 App Div 456 [1951]). While this Court should accept the decisions of the other Judicial Departments of the Appellate Division as persuasive, we are free to reach a different result (*see Mountain View Coach Lines v Storms*, 102 AD2d 663, 665 [1984]; *see e.g. Klee v Americas Best Bottling Co., Inc.*, 76 AD3d 544, 546 [2010]). I would further note that, in our prior decision and order in this matter, we referred only to whether or not the defendant had "actual or constructive notice of the presence of the rifle in the closet" (*Abrams v Berelson*, 283 AD2d at 598).

Here, in my opinion, in light of the facts that the rifle was misleadingly stored in a BB gun box, and the defendant expressly stated that the injured plaintiff and Torres could take whatever they wished from the house, if they notified her they were doing so, if the defendant indeed had constructive notice of the presence of the rifle, under these circumstances, she had, as well, a duty, at the least, to determine whether the rifle was loaded. In this regard, as the majority observes, the injured plaintiff and Torres were adults who should have been "no less able to assess and appreciate the danger of a weapon than the defendant, and the need to treat a weapon with the utmost of care." However, I disagree with the majority in that, under the circumstances of this case, I conclude that the defendant, as the owner of the home, who affirmatively invited the injured plaintiff and Torres into her home, asked them to sort through numerous items, and even offered to allow them to keep items,

did owe a duty to the injured plaintiff to at least determine whether the rifle was loaded. I reach this conclusion in light of the fact that, in New York, "[a] landowner has a duty to exercise reasonable care in maintaining its property in a safe condition under all the circumstances, including the likelihood of injury to others, the seriousness of the potential injuries, the burden of avoiding the risk, and the foreseeability of a potential plaintiff's presence on the property" (*Harris v Debbie's Creative Child Care, Inc.*, 87 AD3d 615, 616 [2011]; *see Basso v Miller*, 40 NY2d 233, 241 [1976]).

Finally, in my estimation, it is not necessary to resort to the parties' conflicting policy arguments to determine this appeal. As the plaintiffs observe, there is a strong public policy in favor of resolving cases on their merits (*see e.g. Friedman, Harfenist, Langer & Kraut v Rosenthal*, 79 AD3d 798, 800 [2010]). However, as the defendant observes, there is also a strong public policy in favor of finality. "Considerations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation" (*Matter of Reilly v Reid*, 45 NY2d 24, 28 [1978]). However, this matter is properly resolved on the grounds set forth above, without resort to these public policy concerns. Additionally, I would note that it is highly unlikely that this case could set an undesirable precedent encouraging litigants to reopen seemingly long-decided cases at their whim. The facts surrounding this case, and Torres's lengthy and deliberate unavailability, are highly unusual, and granting the plaintiffs' motion for leave to renew under these circumstances would hardly open the floodgates to voluminous applications of a similar nature.

Thus, in my opinion, the new facts in the form of Torres's affidavit, in addition to the evidence already before the Supreme Court on the defendant's summary judgment motion, viewed in the light most favorable to the plaintiffs (*see Pearson v Dix McBride, LLC*, 63 AD3d at 895), was sufficient to raise a triable issue of fact as to whether the defendant had constructive notice of the alleged dangerous condition consisting of the loaded rifle stored in a box labeled "Daisy air rifle b.b. gun" in the closet of the defendant's house. Therefore, I am of the opinion that Torres's affidavit "would change the prior determination" on the defendant's motion (CPLR 2221 [e] [2]). Accordingly, I believe that the Supreme Court providently exercised its discretion in granting the plaintiffs' motion for leave to renew pursuant to CPLR 2221 (e), and, upon renewal, properly vacated the order dated August 30, 2000, and thereupon, denied the defendant's motion for summary judgment dismissing the complaint.

**[Prior Case History: 28 Misc 3d 1227(A), 2010 NY Slip Op 51515(U).]**