*147 OPINION OF THE COURT
McCarthy, J.
In 2008, in an effort to reduce traffic congestion, pollution and abuse of parking permits and to encourage the use of public transportation, petitioner City of New York enacted a city-wide plan to reduce the number of parking permits issued to municipal employees for parking on city streets. Prior to enactment of this plan, all employees of the Department of Education of the City of New York (hereinafter DOE), including custodian engineers employed by petitioner Board of Education of the City School District of the City of New York (hereinafter the Board), would apply for parking permits through DOE. The applications were routinely granted. In the 2007-2008 school year, DOE produced more than 63,000 parking permit placards that it issued to DOE employees. Those DOE placards could be used for any of the 10,007 on-street parking spaces marked with signs by the Department of Transportation of the City of New York (hereinafter DOT) exclusively for DOE employees, or any of the 15,060 off-street parking spaces located on DOE property. Possession of a placard did not guarantee a parking space, but permitted a person to park in a space if one could be found. Not every school building had both on-street and off-street parking, and approximately 280 buildings had no parking at all.
After the plan was enacted, DOT was responsible for issuing all parking permits for on-street parking city-wide.[1] The former DOE placards would no longer be considered valid for parking on city streets. In the fall of 2008, DOT provided DOE with 10,007 placards, one for each parking space on city streets that was marked with a sign for DOE employee use. The new parking permits are also site-specific, so they can only be used for parking spaces in proximity to a specific school building, rather than city-wide. DOT also issued DOE approximately 1,000 three-hour parking placards that could be used for on-street parking associated with agency business anywhere in the city. Under the new rules, most of the custodian engineers who applied to DOE for parking permits were denied.
Respondent Local 891, International Union of Operating Engineers, AFL-CIO (hereinafter Local 891), the union representing custodian engineers employed by the Board,[2] filed an improper practice charge with respondent Public Employment
*148 Relations Board (hereinafter PERB) alleging that the Board unilaterally changed a condition of employment by eliminating the automatic grant of parking permits (see Civil Service Law § 209-a [1] [d]). Following a hearing, an Administrative Law Judge (hereinafter ALJ) determined that free parking was a term and condition of employment that was a mandatory subject of bargaining and could not be unilaterally altered. The ALJ found that the Board committed an improper practice and ordered it to post a notice, restore to Local 891 members the practice of granting parking permits upon request and make members whole for wages or benefits lost as a result of the improper practice. The Board appealed and PERB affirmed the ALJ’s decision. Petitioners commenced this proceeding seeking to annul PERB’s decision. PERB counterclaimed seeking enforcement of its remedial order. Supreme Court dismissed the petition and granted PERB’s counterclaim. The court later denied petitioners’ request for reconsideration. Petitioners appeal.
Supreme Court properly determined that the City did not have standing to bring this proceeding. Civil Service Law § 213 (a) permits review of PERB orders “by an aggrieved party.” Petitioners concede that the City and the Board are separate legal entities (see Perez v City of New York, 41 AD3d 378, 379 [2007], lv denied 10 NY3d 708 [2008]). The City was not a party to the PERB proceeding. Respondents contend that the City could have intervened, but the regulation only permits intervention by public employees, a union acting on their behalf or a public employer (see 4 NYCRR 212.1 [a]). It is unclear whether the City could have intervened under that regulation because, despite being a public employer in general, it was not the employer of the employees who filed the grievance at issue (see Education Law § 2590-g [2]). Regardless of whether the City could have been a party in the administrative proceeding, it was not “an aggrieved party” because PERB’s order did not make any findings against the City or order it to do anything.[3] Thus, the City did not have standing to commence a proceeding seeking to annul PERB’s decision and Supreme Court properly dismissed the portion of the petition brought by the City.
In reviewing a PERB determination, courts assess whether it is supported by substantial evidence, which depends *149 on whether there is a rational basis in the record to support the underlying findings (see Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd., 61 AD3d 1231, 1233-1234 [2009]; Matter of Romaine v Cuevas, 305 AD2d 968, 969 [2003]). We accord PERB “deference in matters falling within its area of expertise, including the resolution of improper practice charges” and will not “disturb its determination unless irrational” (Matter of Poughkeepsie Professional Firefighters’ Assn., Local 596, IAFF, AFL-CIO-CLC v New York State Pub. Empl. Relations Bd., 6 NY3d 514, 522 [2006]). An order devised by PERB to remedy an improper practice should be upheld it if can be reasonably applied (see Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd., 61 AD3d at 1234-1235).
It is undisputed that free parking is a term and condition of employment and the proof established that DOE provided parking permits to Local 891’s members upon request for more than 30 years, creating a past practice that must be continued unless altered through the collective bargaining process. It is also undisputed that the Board stopped issuing parking permits to custodian engineers upon their request, and changed the method of distributing parking permits without negotiating with Local 891. The Board argues that this was not an improper practice, however, because the Board contends that it had no control over this change that was imposed upon it by the City, and therefore had no power to negotiate anything regarding this parking permit situation. The power to regulate traffic and parking on city streets is expressly delegated to the City (see NY Const, art IX, § 2 [a], [c] [6]; Vehicle and Traffic Law §§ 1640 [a] [6]; 1642 [a] [2]; Municipal Home Rule Law § 10 [1] [ii] [a] [6]; Matter of Council of School Supervisors & Adm’rs, Local 1, Am. Fedn. of School Adm’rs, AFL-CIO v New York City Dept, of Educ., 87 AD3d 883, 885 [2011], lv denied 19 NY3d 803 [2012]). The relevant questions for us to address are whether the Board had any control over the change in producing and distributing parking permits and whether PERB intruded on an area under the authority of the City or its DOT.
We agree with PERB that the Board did have control over some aspects of the new parking permit situation. DOT produced and provided to DOE 10,007 site-specific placards and 1,000 three-hour permits for on-street parking. According to the record, including testimony from the Board’s own witness, DOE had control over those placards once they were issued to it by *150 DOT. DOT had no control over, and did not dictate any conditions for, how those placards would be distributed by DOE. DOE could have distributed, from the 10,007 on-street placards it received from DOT, a site-specific placard to any custodian engineer who worked at a building with identified on-street parking. DOT had no authority over, and DOE had complete control over, the 15,060 off-street parking spaces located on DOE’s own property. DOE could have produced more off-street parking permits than it had off-street spaces and distributed the permits to any staff members, including custodian engineers, with no guarantee of a parking space.[4] This would have continued the prior practice, at least as far as off-street parking spaces are concerned. While this may not have supported the plan of the City’s Mayor and its goals of reducing pollution, congestion and permit abuse and encouraging use of public transportation, DOE is a separate legal entity from the City and is not directly obligated to further the Mayor’s initiatives (but see Matter of Council of School Supervisors & Adm’rs, Local 1, Am. Fedn. of School Adm’rs, AFL-CIO v New York City Dept, of Educ., 87 AD3d at 886). Thus, DOE could have continued to issue parking permits to custodian engineers despite the changes imposed upon it by the City. DOE could have done so without requiring the City or DOT to issue more permits for on-street parking, and would not have intruded on their constitutional and statutory authority to regulate parking on city streets.
The Board further argues that it could not choose any manner it desired to distribute placards, but was required to adhere to the method included in an agreement between the Mayor and the United Federation of Teachers (hereinafter UFT), the union representing teachers employed by the Board (compare Matter of Germantown Cent. School Dist. v Public Empl. Relations Bd. of State of N.Y., 205 AD2d 961, 963 [1994]). That agreement provided that DOE would produce the same number of off-street permits as it had off-street parking spaces. It also provided that in issuing both on-street and off-street parking permits, principals and UFT chapter leaders from each building must choose one of three distribution methods: “(1) assignment to individual staff; (2) pooling of placards for use each day; or (3) *151 some combination of these two options.” If the principals and UFT representatives could not agree, the default method was for the principal to receive one placard and the remainder would be pooled and available to all building staff on a first come, first served basis each day. As part of this agreement, UFT held in abeyance its grievance over the parking permit situation.
The record is unclear as to how the Mayor’s office became involved in negotiations and reached an agreement with UFT. That union represents employees of the Board (see Education Law § 2590-g [2]), which is a separate public employer from the City (see Perez v City of New York, 41 AD3d at 379), and the City has no employment relationship with UFT’s members. Under the circumstances, the Mayor and the City do not appear to have had any authority to enter into an agreement with UFT. The Board’s witness acknowledged that DOE did not have any agreement with UFT on the parking issue. Although its failure to abide by that agreement may result in a grievance by UFT, DOE is not bound by an agreement entered into by an unauthorized third party with a union representing DOE’s employees (compare Matter of Hirsch v Hirsch, 4 AD3d 451, 453 [2004]). DOE could have negotiated with Local 891 concerning the change in parking permit distribution. By deferring to the agreement between the Mayor and UFT rather than engaging in negotiations with Local 891 or any other unions, DOE impermissibly preferred one union—presumably the one representing the largest number of its employees—over the others. PERB correctly held that this constituted an improper practice (see Civil Service Law § 209-a [1] [d]). Based on the record before us, the remedy of requiring DOE to restore the practice of granting Local 891 members a parking permit upon request—as described above—can be reasonably applied (compare Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd., 61 AD3d at 1235).
Contrary to the Board’s assertion, the recent decision in Matter of Council of School Supervisors & Adm’rs, Local 1, Am. Fedn. of School Adm’rs, AFL-CIO v New York City Dept. of Educ. (87 AD3d 883 [2011], supra) is not controlling. The facts and legal discussion indicate that the First Department addressed only permits for on-street parking, while this case deals with permits for on-street and off-street parking. This factual difference is supported by the record, because Local 891 presented proof regarding the 15,060 off-street parking spaces and DOE’s authority to issue permits for them without restriction from *152 outside agencies such as DOT. Additionally, the arbitrator’s award in that case required DOE to ‘‘return[ ] all parking permits previously held by [the union’s] bargaining unit members” (id. at 884). That award at least appeared to require DOE to give some employees parking permits that did not distinguish between on-street and off-street parking, as was the situation with the previous DOE-produced permits, which would not be recognized as valid and could result in the users receiving parking tickets if they parked on city streets. In this case, PERB required DOE to restore the practice of granting Local 891’s members a parking permit upon request, but it does not state that the permits must be exactly the same as the prior permits. To the extent that the First Department found irrational the union’s argument that the underlying determination did not violate the City’s and DOT’s authority to regulate traffic and parking because DOT issued approximately 10,000 on-street permits and DOE was simply allocating them, we disagree (see id. at 886). PERB’s order directs DOE to provide Local 981 members—at most 950 employees—with parking permits from among the 10,007 site-specific and 1,000 three-hour on-street permits issued by DOT and provided to DOE and the 15,060 (or more if DOE chooses to produce more) off-street permits that DOE produced. This order does not infringe on the City’s and DOT’s authority over parking on city streets and is not irrational.
Supreme Court did not err in denying petitioners’ motion to renew. Motions for leave to renew are left to the sound discretion of the trial court (see Johnson v State of New York, 95 AD3d 1455, 1456 [2012]; Abrams v Berelson, 94 AD3d 782, 787-788 [2012], appeal dismissed 19 NY3d 949 [2012]). Renewal can be based upon, among other things, “a change in the law that would change the prior determination” (CPLR 2221 [e] [2]). The First Department’s reversal of the trial court decision in Matter of Council of School Supervisors & Adm’rs, Local 1, Am. Fedn. of School Adm’rs, AFL-CIO v New York City Dept. of Educ. (supra) did constitute a change in the law, especially considering that Supreme Court here referred to and relied upon that trial court decision. But considering our analysis of the appellate decision in that case and our determination that it is not controlling here, we cannot say that Supreme Court erred in finding that this change in the law would not change its prior determination (see 515 Ave. I Corp. v 515 Ave. I Tenants Corp., 44 AD3d 707, 708 [2007]). Thus, the court did not abuse its discretion in denying the motion to renew.
*153 Rose, J.E, Lahtinen, Spain and Kavanagh, JJ., concur. Ordered that the judgment and order are affirmed, without costs.

. Although not relevant here, the New York City Police Department was also authorized to issue parking permits, mainly to law enforcement agencies.

. The Board employs approximately 950 custodian engineers.

. The City also would not qualify to intervene as of right in this Court proceeding because, due to the PERB decision not ordering the City to do anything, it would not be bound by any judgment (see CPLR 1012 [a] [2]).

. If a custodian engineer works in one of the 280 buildings that has no on-street or off-street parking, issuing a permit for off-street parking would leave him or her in the same position as under the old procedure, with a permit that provides no direct benefit at that particular building, but may be useful if he or she must travel to another building that does have off-street parking and may have an available parking space.