In the Matter of BOARD OF COOPERATIVE EDUCATIONAL SERVICES SOLE SUPERVISORY DISTRICT, ONONDAGA AND MADISON COUNTIES, Petitioner, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.

Third Department, October 15, 1981

**APPEARANCES OF COUNSEL**

*Bond, Schoeneck & King (Richard C. Heffern* of counsel), for petitioner.

*Martin Barr (Anthony Cagliostro* of counsel), for New York State Public Employment Relations Board, respondent.

*Bernard F. Ashe (Gunter Dully* and *Rocco A. Solimando* of counsel), for Onondaga-Madison Employees General Association and another, respondents.

MAHONEY, P. J.

In July, 1973, the Onondaga-Madison Board of Cooperative Educational Services (BOCES) adopted a policy requiring all personnel to take physical examinations. Each teacher employed by BOCES had the option of being examined by a physician designated and paid by BOCES or being examined by his personal doctor at his own expense. While the policy was adopted shortly after section 913 of the Education Law was amended, authorizing boards of cooperative educational services to require their employees to submit to medical examinations by the BOCES physician or a doctor of the employee's choice (L 1973, ch 22, § 1, eff Feb. 20, 1973), BOCES never implemented the stated policy. Nevertheless, in the 1977-1978 and 1978-1979 school years, 21 employees were reimbursed for the cost of personal physical examinations. On November 30, 1978, BOCES suspended its policy relating to "medical requirements of BOCES personnel" and adopted a revised policy with accompanying regulations on January 18, 1979.

On January 29, 1979, the Onondaga-Madison Employees General Association (Association), the recognized representative of noninstructional employees, and the Onondaga-Madison BOCES Federation of Teachers (Federation) filed improper practice charges alleging that BOCES had violated section 209-a (subd 1, par [d]) of the Civil Service Law by unilaterally changing the existing practice regarding physical examinations of employees and demanding that BOCES be required to restore its original policy. On March 13, 1980, the Public Employment Relations Board (PERB) issued a decision finding that BOCES had violated the Taylor Law (Civil Service Law, § 209-a, subd 1) and ordered that the employer "[r]einstate, as of November 30, 1978, the practice with respect to the reimbursement for physical examinations as it existed before November 30, 1978". Thereafter, BOCES commenced this transferred CPLR article 78 proceeding.

Thus postured, three issues are raised for our consideration: Does PERB's determination that BOCES' policy of employee reimbursement for medical examinations constituted a mandatory subject of negotiation rest upon a ra-

tional basis? Did the Association and the Federation waive the right to negotiate a change in policy regarding reimbursement for employee physical examinations by reason of the "management rights clause" contained in both the Association and Federation contracts with BOCES and the "zipper" clause contained in the BOCES-Association contract? Thirdly, was the remedy fashioned by PERB within its power? For the reasons that follow, we conclude that the policy is a mandatory subject of negotiation, that neither the Association nor the Federation waived the right to negotiate, and that PERB's determination was proper and within its authorized powers.

Under the Taylor Law, it is an improper practice for a public employer to refuse to negotiate in good faith with the certified representatives of its public employees (Civil Service Law, § 209-a, subd 1, par [d]). The duty to negotiate in good faith includes an obligation to continue past practices that involve mandatory subjects of negotiation, even in the absence of a provision to that effect in the contract. Under the Taylor Law, terms and conditions of employment are mandatory subjects of negotiation (Civil Service Law, § 204, subd 2). Subdivision 4 of section 201 of the Civil Service Law defines "terms and conditions of employment" as being "salaries, wages, hours, agency shop fee deduction and other terms and conditions of employment". Here, whether a binding practice was established by the reimbursement of 21 employees is a question of fact. While the number of reimbursed employees is relatively small in terms of the time frame before the policy was changed, it nevertheless is clear that every employee who requested reimbursement was paid. Accordingly, we cannot say that PERB's interpretation of these facts was not legally permissible (cf. *Matter of West Irondequoit Teachers Assn. v Helsby*, 35 NY2d 46, 50).

Turning to the question of whether such a past practice constituted a "term or condition of employment", we conclude that it does. PERB's decision that a free physical examination provided or reimbursed by the employer was an economic benefit and a term or condition of employment that could not be unilaterally withdrawn without negotiation is reasonable. It follows, therefore, that BOCES' action

in changing the policy without negotiating in good faith constituted an improper labor practice (cf. *Matter of County of Onondaga v New York State Public Employment Relations Bd.*, 77 AD2d 783). Next, since section 913 of the Education Law does not mandate that BOCES require physical examination of its employees, petitioner's argument that a demand for a benefit duplicating a statutory provision is not a term or condition of employment is without merit.

Petitioner's contention that the Association and Federation waived their right to challenge the change in policy because of the language contained in the "management rights" clause contained in both contracts and the "zipper" clause of the BOCES-Association contract must be rejected. The breadth of the language to which the parties agreed in their respective contracts, effective July 1, 1978, drains both the "management rights" and "zipper" clauses of the degree of specificity needed to infer a waiver on the part of the unions. While it cannot be denied that both clauses under review contain language of agreement that all terms and conditions of employment have been discussed during negotiations, and, further, that the parties may waive their right to object to changes, such waiver must be expressed in such clear and unmistakable terms that it clearly appears from an evaluation of the negotiations that the particular matter in issue was fully discussed and consciously explored. Application of such indicia to the two clauses herein fails to indicate that the unions consciously waived their right to object to BOCES' change in medical procedures.

Lastly, petitioner's contention that PERB's order must be set aside because it exceeds the scope of the unions' charges and, further, requires the expenditure of public money in violation of section 1 of article VIII of the New York State Constitution is without merit. While it is true that the charges did not claim that BOCES eliminated a practice of employee reimbursement, it is equally true that PERB could rationally construe the charge of improper practice to embrace allegations that BOCES, once it had established the practice of reimbursing all employees for the costs of physical examination, could not unilaterally

discontinue that practice. With respect to the alleged constitutional error, we note that PERB has the authority to take such affirmative action as will effectuate the policies of the Taylor Law (Civil Service Law, § 205, subd 5, par [d]; see, e.g., *Matter of Jefferson County Bd. of Supervisors v New York State Public Employment Relations Bd.,* 36 NY2d 534, 538).

The determination should be confirmed, and the petition dismissed, with costs.

SWEENEY, CASEY, YESAWICH, JR., and WEISS, JJ., concur.

Determination confirmed, and petition dismissed, with costs.