In the Matter of CITY OF POUGHKEEPSIE, Petitioner, v HAROLD E. NEWMAN et al., Constituting the Public Employment Relations Board of the State of New York, et al., Respondents.

Third Department, July 28, 1983

**APPEARANCES OF COUNSEL**

*Richard I. Cantor, Corporation Counsel,* for petitioner.

*Martin L. Barr* (*Richard A. Curreri* of counsel), for Public Employment Relations Board of the State of New York, respondent.

*Roemer & Featherstonhaugh* (*Richard L. Burstein* of counsel), for City of Poughkeepsie Unit of the Dutchess County Local of CSEA, respondent.

MAHONEY, P. J.

Petitioner and respondent City of Poughkeepsie Unit of the Dutchess County Local of the Civil Service Employees Association (CSEA) were parties to a collective bargaining agreement effective January 1, 1979 through December 31, 1980. During the summer of 1979, petitioner began to investigate and solicit proposals for transfer of the operation of its municipal parking facilities and sewage treatment plant to private contractors. CSEA demanded negotiations on the matter alleging that such subcontracting would "directly affect the terms and conditions of employment of a substantial portion of our membership".

While petitioner agreed to negotiate and held a meeting on November 9, 1979, at which time CSEA presented its objections and counterproposals, on November 15, 1979 petitioner's city manager submitted the annual city budget for 1980 to the city's common council. Included in the budget were recommendations to subcontract the parking facilities to Meyers Parking Systems, Inc., and the sewage treatment plant to Envirotech Corporation. Thereafter, in an exchange of letters and appearances by CSEA before the common council's finance committee and the common council itself, the parties refined their positions to the degree that petitioner offered to protect the jobs of CSEA members working for the city's parking facility and sewage plant by transferring such employees to the payrolls of the private subcontractors. Petitioner signed contracts with Meyers Parking Systems, Inc. and Envirotech Corporation effective January 1, 1980.

CSEA filed an improper practice charge against petitioner alleging that the city subcontracted out services without conducting good-faith negotiations with the union, in violation of section 209-a of the Civil Service Law. Petitioner's answer to the improper practice charge asserted that it was under no obligation to negotiate and, in any event, that it did conduct good-faith negotiations.

The hearing officer found that the city had violated section 209-a (subd 1, par [d]) of the Civil Service Law and ordered reinstatement of the terminated employees with

back pay and directed the city to negotiate in good faith. The Public Employment Relations Board (PERB) affirmed the hearing officer's decision and this transferred CPLR article 78 proceeding seeking to challenge that determination ensued.

Initially, we note that PERB relied on this court's decision in *Matter of Saratoga Springs City School Dist.* (*New York State Public Employment Relations Bd.*) (68 AD2d 202, mot for lv to app den 47 NY2d 711) for support of its determination that subcontracting services that merely substitute private employees for public employees resulting in the same work being performed in the same place is an executive decision implicating terms and conditions of employment and, accordingly, is a mandatory subject for negotiations. While this determination is rational and supported by substantial evidence in the record, it does not necessarily resolve the issue of whether petitioner is guilty of an improper employer practice since the parties may have agreed to waive their right to negotiate on the subject (*Matter of Board of Coop. Educational Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Public Employment Relations Bd.,* 82 AD2d 691, 692-693). The contract of employment in *Saratoga Springs* (*supra*) did not, as here, contain a "management rights" clause which, petitioner insists, unequivocally invested it with a bargained-for right to contract out municipal services.

Section 1 of article IV of the collective bargaining agreement between petitioner and CSEA states: "The CITY retains the right to manage its business affairs and services and * * * *to determine whether and to what extent the work required in operating its business and supplying its services shall be performed* by employees covered by this Agreement" (emphasis added). It cannot be denied that a desire to save money or increase managerial efficiency are legitimate business motives. Such motives, however, are relevant only to the wisdom of a decision by a municipality to subcontract services to obtain those goals. They are not relevant to the issue of negotiability of the issue of subcontracting unless the city has bargained for and obtained such rights.

While it appears that the above-quoted section 1 of article IV supports petitioner's position that it did, indeed, bargain for and obtain the right to subcontract in prior negotiations with CSEA, section 1 must be read in the context of the whole article. Section 2 of the article states: "All rights of the CITY under this Agreement are subject to such regulations governing the exercise of said rights as are expressly provided in this Agreement *or provided in Article 14 of the Civil Service Law of the State of New York or other relevant statutes*" (emphasis added). Under the Taylor Law, terms and conditions of employment are mandatory subjects of negotiation (Civil Service Law, § 204, subd 2). Subdivision 4 of section 201 of the Civil Service Law defines "terms and conditions of employment" as being "salaries, wages, hours * * * and other terms and conditions of employment". Here, upon termination of their public employment, all employees of the municipal parking facilities and sewage system would lose accumulated sick leave, vacation pay, membership in the New York State Employees' Retirement System and disciplinary protection under section 75 of the Civil Service Law.

A collective bargaining provision allowing a public employer to unilaterally subcontract must be explicit, unmistakable and unambiguous, and should constitute a waiver by the union of its right to negotiate with respect to such matters (*Matter of Civil Serv. Employees Assn. v Newman,* 88 AD2d 685, 686, app dsmd 57 NY2d 775). In the absence of any provision in the subject contract regarding the subcontracting of city services to private corporations, and in the absence of any record evidence to demonstrate a full and conscious discussion of the issue during collective bargaining that could even minimally support petitioner's contention that CSEA waived its right to negotiate with respect to this issue, PERB's conclusion that CSEA did not waive its right to negotiate is supported by substantial evidence (*Matter of Civil Serv. Employees Assn. v Newman, supra*) and must be upheld.

We also reject petitioner's contention that, regardless of the validity of its argument that it was under no obligation to negotiate a decision to subcontract city services, it did indeed conduct good-faith negotiations with CSEA and,

therefore, did not violate section 209-a (subd 1, par [d]) of the Civil Service Law. Apart from a meeting on November 9, 1979 between city and CSEA representatives, CSEA was reduced to appearing before the common council's finance committee and the legislative body itself. Since legislative bodies generally have no negotiating function (see Civil Service Law, § 201, subd 12; § 204-a, subd 1; § 209, subd 3, par [e]), PERB's conclusion that the course of conduct between the parties did not constitute good-faith negotiations was supported by substantial evidence and must be upheld (*Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46).

To remedy petitioner's improper practice PERB issued an order which (1) directed the city to offer reinstatement under their prior terms and conditions of employment to those employees terminated as a result of the subcontracting together with any loss of wages or benefits that they suffered by reason of such agreement, and (2) ordered the city to negotiate in good faith with CSEA concerning terms and conditions of employment. We find this order to be appropriate, lawful and within the broad remedial powers granted to PERB (see Civil Service Law, § 205, subd 5, par [d]; *Matter of New York State Public Employment Relations Bd. v Board of Educ.,* 39 NY2d 86; *Matter of City of Albany v Helsby,* 29 NY2d 433). We also conclude that PERB's counterclaim for enforcement of its remedial order is proper (see Civil Service Law, § 213, subd [a]; *Matter of United Univ. Professions v Newman,* 83 AD2d 669, mot for lv to app den 54 NY2d 611).

The determination should be confirmed, the petition dismissed, and the application for enforcement granted, without costs.

MAIN, MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Determination confirmed, petition dismissed, and application for enforcement granted, without costs.