OPINION OF THE COURT
Bernard Burstein, J.
After trial, plaintiff is awarded judgment for lost net wages for the period November 4 through November 30, 1984 ($887) on the ground that to this extent he was suspended without pay in excess of 30 days without fault on his part, in violation of Civil Service Law § 75 (3).
FACTS
To the credit of both sides, the essential facts on the liability issue are undisputed. (1) On October 4, 1984, plaintiff was charged with misconduct and suspended without pay *720 pending determination of those charges. (2) He invoked a grievance procedure provided in his union’s contract with defendant (TA). (3) After step 4 of this grievance procedure he elected to exercise (by declining to "waive”) his rights to a departmental trial and appeal pursuant to Civil Service Law §§ 75 and 76. (4) On December 1, 1984, after a total of 56 days on suspension without pay, he was restored to the payroll (although he was not returned to work). (5) He remained on the payroll till February 25, 1985, when his pay was again suspended because his requests to adjourn the departmental trial were granted. (6) The departmental trial has still not been held. (7) Prior to October 4,1984, he accumulated annual leave. (8) He has received no unemployment benefits.
Plaintiff seeks no payment of wages after February 25, 1985 but only for the period from November 4 through November 30 on the ground that the 30-day suspension commencing October 4 terminated on November 3 and, through no fault of his, he was not restored to the payroll until December 1, 1985, and also seeks cash payment for unused annual leave. Upon the above undisputed facts, and also the union contract placed in evidence by the Transit Authority, the decision is solely a matter of law.
JURISDICTIONAL OBSERVATIONS
Even if plaintiff is found guilty of the charges and his employment terminated, he is still entitled to payment for the period of any suspension that is in excess of what is permitted by statute or by contract, to the extent such delay was not occasioned by himself. (Matter of Amkraut v Halts, 21 AD2d 260 [1st Dept 1964]; Matter of Thompson v New York City Tr. Auth., 78 AD2d 543 [2d Dept 1980].) Thus he can sue for the determinable amount of such pay prior to determination of the charges of misconduct. (Levine v New York City Tr. Auth., 70 AD2d 900 [2d Dept 1979], affd 49 NY2d 747 [1980].) Such claim can be asserted also in an action at law. (Gerber v New York City Horn. Auth., 42 NY2d 162, 165 [1977].) The TA does not contend otherwise.
SUSPENSION WITHOUT PAY
Civil Service Law § 75 (3) allows for suspension without pay "[p]ending the hearing and determination of charges of * * * misconduct” but explicitly provides that such suspension without pay shall "not exceed * * * thirty days.” Not inconsistent *721 with the obvious purpose of such limitation is a construction of the statute that excludes from this limitation any period of delay occasioned by the employee. (Matter of Amkraut v Hults, supra.) But the force of this policy, and of the Legislature’s intention to avoid undue deprivation of the employee’s rights, is the fact that the limitation applies even where the employer is not at fault. (Levine v New York City Tr. Auth., supra.)
The TA’s position is that this statutory limitation has been altered or waived by a collective bargaining agreement, which, according to the TA, provides for additional suspension without pay where the employee invokes a contractual grievance procedure prior to a departmental trial. That position was accepted in Ferro v New York City Tr. Auth. (121 Misc 2d 716 [Civ Ct, Kings County 1983, Diamond, J.]). This court finds no other decision involving this contract, either for or against the TA’s position. The Ferro decision is not binding upon this court and is not followed here.
This court agrees with Ferro (supra) and other cases that a union is free to bargain away its members’ statutory rights (121 Misc 2d, at p 718) but disagrees, with respect to the limitation on suspensions, that plaintiff’s union did so in this particular contract. In the Ferro opinion, there is no quote from, or even a citation to, any specific language in the contract to support the conclusion there reached.
THE CONTRACT
Disciplinary procedures are the subject of a lengthy article VI of the contract, which states its purpose to set up a "substitute disciplinary procedure” to that in Civil Service Law §§ 75 and 76. Shortly after that, in one of only two references to the subject of suspensions, it provides: "This provision shall not, however, foreclose pre-disciplinary suspension of an employee [followed by language not here relevant].” The only other reference to "suspensions” is in the detailed description of a four-step grievance procedure, to wit, a provision that "In case of suspension, the meeting at Step 1 shall be omitted”, and it goes on to state that the employee shall then proceed to step 2 level "within 24 hours” with a decision within two days thereafter. (Those two steps would otherwise take 12 days.)
Here the words in the contract "shall not, however, foreclose pre-disciplinary suspension” can easily be read as effec *722 tive only to negate any construction of the earlier phrase "substitute disciplinary procedure” (in art VI of the contract) as being a "substitute” for, and hence as foreclosing, the TA’s right to suspend under the statute, and is not at all inconsistent with the limitation on such suspensions as is contained in such statute.
In the face of two possible interpretations, one not providing for a waiver of a significant statutory protection, the presumption must be against waiver. A waiver of a statutory protection must be knowingly made (Traver v City of Poughkeepsie, 108 AD2d 18, 23 [2d Dept 1985]) and this intent is derived only when expressed in terms that are "unmistakable”. (Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist. v New York State Public Employment Relations Bd., 82 AD2d 691, 694 [3d Dept 1981].)
Not only is the TA’s position not supported by the language of the contract (which is fatal to its argument) but it is also not logically supported by the context in which that contract language appears. In the case of a suspension, the employee can be at step 3 of the grievance procedure after three days and can conclude the entire procedure within six days thereafter. It need not be further delayed since all decisions are by the TA’s managerial employees. There is still at least 20 days left for a departmental trial and decision (by a departmental officer) before the expiration of the 30-day limitation. That is certainly adequate. Even if that were improvident from the TA’s view this would not be a basis for any artificial interpretation of the contract language. (Cf. Aloi v Board of Educ., 81 AD2d 874, 876 [2d Dept 1981].) After step 4 the employee (if aggrieved) proceeds automatically to a departmental trial under Civil Service Law § 75 unless he affirmatively executes a written waiver of his statutory rights and elects to have impartial arbitration instead. Here the plaintiff never made such waiver, another reason why he should not be deemed to have "waived” the statutory protections. Further, as to anyone making the election to go to impartial arbitration, this contract is silent as to when any suspension begins and when it ends (since there are no constraints on the arbitrator) and also, as is noted in Ferro (121 Misc 2d 716, supra), "[t]he agreement is * * * silent as to any relationship of the suspension periods” (121 Misc 2d, at p 718). To this court, all of these significant omissions, which a court is not in a position to supply by "construction” of language, are the clearest indication that the parties, at least the union, never intended any *723 provision for suspension without pay except as is provided for by Civil Service Law § 75 (3), which has to apply (logically) regardless of what options the employee exercised. Had the parties intended otherwise, they could easily have inserted the appropriate language to do so amidst the otherwise scrupulously detailed provisions in article VI of the contract.
STATUTORY ARGUMENT
The TA has here relied solely upon the contract for its position, and chose not to argue that the plaintiffs invoking the grievance machinery resulted in delay of the departmental trial and therefore such period should be excluded from the 30-day period.
Had such argument been made, it would be rejected. That principle, which applies where an employee is granted adjournments of the trial, should not be applied to a period during which the parties utilized a mutually agreed upon grievance procedure, the timing of which was primarily under the control of the TA’s managerial employees, and which, most significantly, was of benefit to both, in creating an opportunity to "settle” the matter without necessity for a departmental trial or impartial arbitration.
ANNUAL LEAVE
In the absence of an explicit statutory or contractual provision mandating that an employee receive moneys as a substitute for unused vacation, there is no basis for a court making such award. (Matter of Rubinstein v Simpson, 109 AD2d 885, 886 [2d Dept 1985]; Smith v City of New York, 120 Misc 2d 868 [App Term, 1st Dept]; Grossman v City of New York, 71 Misc 2d 234 [App Term, 1st Dept]; cf. Matter of Chalachan v City of Binghamton, 55 NY2d 989 [1982].) The plaintiff invokes no such provision and this court finds none.
Indeed, since plaintiff was paid for the period from December 1, 1984 through February 25, 1985, and by this decision also for the period from November 4 through November 30, 1984, when he did not work, and since either such period exceeds his annual leave, it could be said that he used up his leave during that period. To pay him additional moneys would be to increase his earnings above and beyond what his contract entitles him. (See, Grossman v City of New York, supra; Matter of Chalachan v City of Binghamton, supra.)
*724 AMOUNT OF DAMAGES
By this decision, plaintiff is entitled to pay for 26 days (from Nov. 4 through Nov. 30 inclusive). The court did not ask him whether he was employed during this period but that would not diminish his recovery. (Civil Service Law §75.) It does appear however that he did not receive unemployment insurance.
He testified that he earned $510 (every two weeks) and on this basis, for 26 days, he is entitled to $887. The TA is urged, if it does not appeal this decision, to pay him the precise amount and to make all appropriate deductions from his pay, and the plaintiff is urged in good faith to accept this if it is correct. If either party disagrees, it is invited to proceed by motion to this court to resettle the amount of the judgment.