◼ In the Matter of CHENANGO FORKS CENTRAL SCHOOL DISTRICT, Petitioner, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents. [944 NYS2d 665]—

Peters, P.J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which found that petitioner had committed an improper employer practice.

In June 2003, petitioner sent a memorandum to faculty and staff represented by respondent Chenango Forks Teachers Association, NYSUT, AFT, AFL-CIO, Local 2561 (hereinafter the Association) announcing that it would cease its longstanding practice of reimbursing retirees' Medicare Part B premiums. Although the 2001-2004 collective bargaining agreement (hereinafter CBA) in place at the time between petitioner and the Association did not explicitly obligate petitioner to make such reimbursements, petitioner had done so since at least 1980 when such reimbursement was required by the Empire Plan, the health insurance plan provided to employees up until 1990. That year, petitioner and the Association entered into a new CBA, and health insurance coverage was changed to Blue Cross/ Blue Shield, which did not require the reimbursement of Medicare Part B premiums. Petitioner, however, continued to make such reimbursements.

As a result of the June 2003 memorandum, the Association initiated a grievance alleging a violation of the CBA.[1] At the same time, the Association filed an improper practice charge

---

1. A group of retirees also commenced a CPLR article 78 proceeding to annul petitioner's determination to discontinue Medicare Part B premium reimbursements (*Matter of Bryant v Board of Educ., Chenango Forks Cent. School Dist.,* 21 AD3d 1134 [2005]). This Court remitted the matter to Supreme Court for further record development to determine whether there had been a "corresponding diminution of benefits or contributions" effected by petitioner from active employees (L 2003, ch 48, § 1; *see Matter of Bryant v*

with respondent Public Employment Relations Board (hereinafter PERB) alleging that petitioner violated Civil Service Law § 209-a (1) (d) by failing to negotiate the discontinuance of reimbursement of Medicare Part B premiums. PERB conditionally dismissed the charge subject to a motion to reopen the matter after the conclusion of the grievance procedure. When the grievance proceeded to arbitration, an arbitrator determined that petitioner was under no contractual obligation to continue the payments.

Thereafter, the Association successfully moved to reopen the PERB proceeding. Following a hearing, an Administrative Law Judge (hereinafter the ALJ) found that petitioner's practice of reimbursement had "giv[en] rise to a reasonable expectation by current employees that they proceed under a promise of post-retirement [reimbursement]" and, thus, petitioner's unilateral decision to discontinue reimbursement violated its collective bargaining obligations under Civil Service Law § 209-a (1) (d). Upon administrative appeal, PERB rejected petitioner's several exceptions, but remanded the case to the ALJ to take additional evidence from the parties as to whether the Association and/or current employees had actual or constructive knowledge of the reimbursement so as to determine whether either had a reasonable expectation that the practice would continue. Following a hearing during which testimony was presented from a number of current and former employees of petitioner, as well as Association representatives, the ALJ determined that both the Association and employees had been aware of the at-issue reimbursement for several years prior to the June 2003 memorandum and, thus, petitioner had violated Civil Service Law § 209-a (1) (d) by unilaterally ceasing the practice without negotiation. PERB affirmed the ALJ's decision and this CPLR article 78 proceeding challenging PERB's determination ensued.

Under the Taylor Law, a public employer is obligated to negotiate in good faith with the bargaining representative of its current employees regarding "terms and conditions of employment" (Civil Service Law § 204 [2]), and the failure to do so constitutes an improper employment practice (*see* Civil Service Law § 209-a [1] [d]). "Pursuant to this duty to negotiate, where a past practice between a public employer and its current employees is established, involving a mandatory subject of negotiation, the Taylor Law would bar the employer from discontinuing that practice without prior negotiation" (*Matter of Aeneas*

*Board of Educ., Chenango Forks Cent. School Dist.*, 21 AD3d at 1137-1138). The instant proceeding, by comparison, involves current employees of petitioner.

*McDonald Police Benevolent Assn. v City of Geneva,* 92 NY2d 326, 331 [1998] [citations omitted]; *see Matter of State of New York [Div. of Military & Naval Affairs] v New York State Pub. Empl. Relations Bd.,* 187 AD2d 78, 82 [1993]; *Matter of Incorporated Vil. of Hempstead v Public Empl. Relations Bd.,* 137 AD2d 378, 383 [1988], *lv denied* 72 NY2d 808 [1988]; *Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Empl. Relations Bd.,* 82 AD2d 691, 693-694 [1981]).

We reject petitioner's assertion that reimbursement of Medicare Part B premiums is not a "term and condition of employment" subject to mandatory negotiation. Health benefits for current employees are a form of compensation, and thus a term of employment that is a mandatory subject of negotiation (*see Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva,* 92 NY2d at 331-332). While Civil Service Law § 201 (4) prohibits negotiation of certain retirement benefits, the continuation of health insurance payments to current employees after their retirement is not a retirement benefit within the meaning of that provision (*see Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.,* 48 NY2d 398, 404 [1979]; *Matter of Jefferson-Lewis-Hamilton-Herkimer-Oneida BOCES [JLHHO BOCES Professional Assn.],* 219 AD2d 801, 802 [1995], *lv denied* 87 NY2d 812 [1996]). Rather, such health insurance benefits, although paid after retirement, constitute a form of compensation earned by the employee while employed. Thus, as the Court of Appeals has held, and PERB rationally concluded here, petitioner "ha[d] a duty to negotiate with the bargaining representative of current employees regarding any change in a past practice affecting their own retirement health benefits" (*Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva,* 92 NY2d at 332 [emphasis omitted]; *see Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.,* 48 NY2d at 404; *Matter of Jefferson-Lewis-Hamilton-Herkimer-Oneida BOCES [JLHHO BOCES Professional Assn.],* 219 AD2d at 802; *Matter of Corinth Cent. School Dist. [Corinth Teachers Assn.],* 77 AD2d 366, 367 [1980], *lv denied* 53 NY2d 602 [1981]).

We next address the question of whether a binding past practice was established. Initially, we cannot agree with the dissent's conclusion that PERB abused its discretion in declining to defer to the arbitrator's finding in the grievance proceeding

that a past practice did not exist.[2] The issue before PERB was whether, irrespective of any contractual obligation in the parties' CBA, a past practice of reimbursing retirees for Medicare Part B premiums was established such that petitioner was barred from discontinuing that practice without prior negotiation (see *Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d at 331; *Matter of Incorporated Vil. of Hempstead v Public Empl. Relations Bd.*, 137 AD2d at 383; *Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Empl. Relations Bd.*, 82 AD2d at 693). In determining whether a binding past practice exists, PERB's inquiry focuses on whether the employer's "practice was unequivocal and was continued uninterrupted for a period of time under the circumstances to create a reasonable expectation among the affected unit employees that the [practice] would continue" (*Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd.*, 61 AD3d 1231, 1233 [2009] [internal quotation marks and citations omitted]; accord *Matter of Fashion Inst. of Tech. v New York State Pub. Empl. Relations Bd.*, 68 AD3d 605 [2009]). In stark contrast, the specific issue before the arbitrator was whether petitioner was under a contractual obligation to make Medicare Part B reimbursement payments to retirees.

As the arbitrator noted at the outset of his decision, his jurisdiction was derived solely from the parties' CBA and limited to interpreting the language contained within the four corners of the agreement. The arbitrator ultimately concluded that petitioner did not have a contractual obligation to reimburse retirees for Medicare Part B premiums because the CBA lacked language requiring such payments and did not contain a maintenance of benefits clause requiring the continuation of noncontractual past practices. Thus, the arbitrator's statement in the award that there was no past practice regarding the at-issue benefits was entirely dicta and, as noted by PERB, was neither convincing nor binding upon it (see *Matter of Schuyler-Chemung-Tioga Educ. Assn. [Schuyler-Chemung-Tioga Bd. of Coop. Educ. Servs.]*, 34 PERB ¶ 3019 [2001]). Moreover, while the dissent correctly notes that PERB has articulated a policy of deferring to an arbitrator's decision in an improper practice proceeding "under certain limited circumstances" (*Matter of New York City Tr. Auth. [Transport Workers Union of Am.]*, 4 PERB ¶ 3031 [1971]), PERB has also made clear that it "is not required to defer to a determination made by an arbitrator and

---

2. We note that the dissent raises this issue despite the fact that it was not argued by petitioner in either its petition or brief to this Court.

certainly should not defer to such a determination where [it] concludes that the statutory scheme is not effectuated by an award" (*id.*). Here, it is unclear what, if any, criteria the arbitrator used in summarily concluding, in dicta, that no binding past practice existed and, as PERB specifically noted in its decision, to the extent the arbitrator may have attempted to apply its past practice criteria, the arbitrator's conclusion was repugnant to the Civil Service Law. Under these circumstances, PERB's declination to defer to the arbitrator's finding in addressing whether a past practice existed was neither arbitrary nor capricious (*see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd.*, 267 AD2d 935, 936-937 [1999]).

Turning to the merits of its past practice determination, PERB found a reasonable expectation by unit employees that they would receive reimbursement of Medicare Part B premiums upon their retirement. This finding is supported by the stipulated facts that petitioner reimbursed Medicare Part B premiums to active employees and retirees since at least 1980 and that, despite the fact that the health insurance coverage provided under the CBAs subsequent to 1990 did not require such reimbursement, petitioner continued to do so until July 2003. Furthermore, numerous witnesses testified that they were made aware of petitioner's practice prior to the June 2003 announcement through conversations with other employees or retirees. Contrary to petitioner's contention, PERB properly determined that these out-of-court statements regarding what the witnesses were told were offered not to prove the truth of the statements, but to establish what the witnesses believed at the time, and therefore were admissible for that purpose (*see Matter of Bergstein v Board of Educ., Union Free School Dist. No. 1 of Towns of Ossining, New Castle & Yorktown*, 34 NY2d 318, 324 [1974]; *Grossjahann v Wilkins & Sons*, 244 AD2d 808, 810 [1997]). Moreover, to the extent that petitioner challenges the veracity of certain witnesses, highlights inconsistencies in their testimony and stresses the paucity of proof, it is not our role to weigh the evidence or assess the credibility of the testimony presented (*see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd.*, 2 AD3d 1197, 1198 [2003]; *Matter of Romaine v Cuevas*, 305 AD2d 968, 968-969 [2003]; *Matter of De Vito v Kinsella*, 234 AD2d 640, 642 [1996]). Inasmuch as the testimony credited by PERB supplies a rational basis to support its determination that there was a qualifying past practice that was improperly terminated by petitioner, the determination must be upheld (*see Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd.*, 61 AD3d at 1234).

Nor can we conclude that, by entering into a new CBA for the 2004-2007 period, which is silent regarding the reimbursement of Medicare Part B premiums, the Association waived its right to negotiate a change in petitioner's practice of providing Medicare Part B reimbursement. "A waiver is the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it . . . Such a waiver must be clear, unmistakable and without ambiguity" (*Matter of Civil Serv. Empls. Assn. v Newman*, 88 AD2d 685, 686 [1982] [internal quotation marks and citation omitted], *affd on op below* 61 NY2d 1001 [1984]; *accord Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd.*, 7 NY3d 458, 465 [2006]; *see Matter of County of Erie v State of New York*, 14 AD3d 14, 17 [2004]). Despite petitioner's assertion to the contrary, the boilerplate language in the 2004-2007 CBA—that it "constitutes the full and complete commitments of the [parties] whether or not any item contained [within it] was known or should have been known, or was or was not discussed by the parties at the moment when they entered into this agreement"—does not evince an explicit, unmistakable, and unambiguous waiver of the Association's right to negotiate (*see Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Empl. Relations Bd.*, 82 AD2d at 694).[3] Further, while the 2004-2007 CBA, like the previous CBAs, requires petitioner to pay premiums for other forms of insurance after retirement and provides that it "shall supersede any . . . practice of [petitioner] which shall be contrary to or inconsistent with its terms," it is entirely silent with respect to Medicare Part B insurance, and whether such premiums will or will not be reimbursed. Moreover, it is undisputed that the subject was not discussed during negotiations for the 2004-2007 CBA. In the absence of any provision in the 2004-2007 CBA regarding the reimbursement of Medicare premiums and without any record evidence to demonstrate a conscious discussion of the issue during collective bargaining that could support petitioner's contention that the Association waived its right to negotiate with respect to this issue, PERB's conclusion that the Association did not waive its right to negotiate is rational and supported by substantial evidence (*see Matter of County of Erie v State of New York*, 14 AD3d at 17; *Matter of City of Poughkeepsie v Newman*, 95 AD2d 101, 104 [1983], *appeal dismissed* 60 NY2d 859 [1983], *lv denied* 62 NY2d 602 [1984]; *Matter of Civil Serv. Empls. Assn. v New-*

---

**3.** Notably, this clause, as well as the "supersession clause," was carried over from the 2001-2004 CBA and left completely unchanged.

*man*, 88 AD2d at 686; *Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Employment Relations Bd.*, 82 AD2d at 694; *see also Matter of Odessa-Montour Cent. School Dist. v New York State Pub. Empl. Relations Bd.*, 228 AD2d 892, 894 [1996]; *compare Matter of Frontier Ins. Co. v Koppell*, 225 AD2d 93, 95 [1996], *lv denied* 90 NY2d 806 [1997]).[4]

Finally, reimbursing active employees for Medicare Part B premiums does not constitute an improper gift of public funds (*see* NY Const, art VIII, § 1), as the reimbursements represent compensation earned by employees while employed and in consideration for a benefit furnished to petitioner (*see Gagliardo v Dinkins*, 89 NY2d 62, 74-75 [1996]; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington*, 30 NY2d 122, 128 [1972]).

Petitioner's remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be without merit.

Kavanagh and Garry, JJ., concur.

Lahtinen, J. (dissenting). Respectfully, we dissent and would grant the petition. Nearly nine years ago, escalating health care costs ostensibly resulted in petitioner notifying its employees that it was planning to cut a non-contractual benefit that at that time cost the school over $100,000 per year. Respondent Chenango Forks Teachers Association, NYSUT, AFT, AFL-CIO, Local 2561 (hereinafter the Association) filed a grievance under the 2001-2004 collective bargaining agreement (hereinafter CBA) in July 2003. Some months later, in September 2003, the Association filed an improper practice charge with respondent Public Employment Relations Board (hereinafter PERB). PERB made a pre-arbitral deferment to the pending arbitration and hence conditionally dismissed the charge subject to a motion to reopen.

In November 2004, the arbitrator determined that petitioner had not violated the CBA since there was no requirement therein for such a payment. The arbitrator's decision reflects that the Association had argued and relied upon past practice evidence regarding Medicare Part B reimbursements at the

---

**4.** In reaching this result, we reject petitioner's contention that PERB's determination was arbitrary and capricious for failing to follow its own precedent. *Matter of Waverly Cent. School Dist. (Waverly Assn. of Support Personnel)* (20 PERB ¶ 4569 [1987]), relied upon by petitioner, is readily distinguishable in that there, unlike here, the CBA entered into between the parties contained language that was explicitly at odds with the past practice sought to be enforced.

arbitration and, noting that evidence, the arbitrator held that "such practices originated from the former Empire Plan and a now repealed statutory obligation on the part of [petitioner], and once the statutory obligation was removed, [petitioner] made voluntary Medicare Part B reimbursement payments to retirees. The voluntariness of [petitioner's] conduct, given the origin of [petitioner's] Medicare Part B reimbursements, does not contain sufficient evidence of a mutual understanding and agreement to establish a binding past practice." Unhappy with the result and seeking to relitigate the issue of past practice, the Association moved to reopen the improper practice charge. PERB granted the application and, well over five years after the arbitrator's decision, PERB rendered a determination in April 2010 in favor of the Association and directed petitioner to rescind its June 2003 announcement.

Strong public policy supports permitting willing parties to frame their issues and resolve their disputes through arbitration, which almost always expedites the matter and conserves resources (*see Stark v Molod Spitz DeSantis & Stark, P.C.*, 9 NY3d 59, 66 [2007]). Once parties have charted that course, with its benefits and concomitant risks, " '[i]t has long been the policy of the law to interfere as little as possible' " (*Westinghouse Elec. Corp. v New York City Tr. Auth.*, 82 NY2d 47, 54 [1993], quoting *Matter of Siegel [Lewis]*, 40 NY2d 687, 689 [1976]). The issue of past practices may be considered by arbitrators (*see Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d 326, 332 [1998]), and " '[a]rbitrators may do justice' and 'are not bound by principles of substantive law or rules of evidence' " (*id.*, quoting *Lentine v Fundaro*, 29 NY2d 382, 386, 385 [1972]).

Consistent with these general arbitration policies, it has long been the policy, both of PERB and in national labor relations matters, to accord post-arbitral deference to an arbitrator's decision so long as the disputed issue was presented and considered by the arbitrator, the arbitration proceeding was fair, and the arbitrator's decision was not clearly repugnant to the purposes and policies of PERB (*see e.g. Matter of New York City Tr. Auth. [Transport Workers' Union of Am.]*, 4 PERB ¶ 3031, 1971 WL 252455; *Hammontree v National Labor Relations Bd.*, 925 F2d 1486, 1491 [1991]; *see generally* 48 Am Jur 2d, Labor and Labor Relations § 646). Here, the Association sought arbitration, it urged past practice as supporting its position in the arbitration,[5] there is no allegation that it did not have a full opportunity to

---

5. The Association should not benefit from a contention that, by addressing past practices, the arbitrator exceeded the issues before him when, as

advocate its position in the arbitration, and the arbitrator's decision was not clearly repugnant to PERB's purpose. The arbitrator addressed in a relatively prompt fashion the issues that had significant financial ramifications for all parties, as well as for taxpayers in the school district. Under these circumstances, PERB abused its discretion in disregarding its established post-arbitral deference policies.[6] Such arbitrary disregard resulted in a procedure that was unduly protracted, and a determination that is not free of constitutional concern (*see* NY Const, art VIII, § 1; *cf. Matter of Karp v North Country Community Coll.*, 258 AD2d 775, 775-776 [1999] [payments not expressly authorized by statute, resolution or contract are unconstitutional public gifts, and prior practice alone does not permit circumvention of the constitution]; *but see Matter of Baker v Board of Educ.*, 29 AD3d 574, 575 [2006], *lv denied* 7 NY3d 708 [2006]).

Rose, J., concurs. Adjudged that the determination is confirmed, without costs, and petition dismissed.

---

stated in the arbitrator's decision, it was the Association that presented that issue at the arbitration.

**6.** The petition, which seeks to set aside PERB's determination as, among other things, arbitrary, includes among its many allegations the arbitrator's ruling on past practices. Petitioner's brief, referring to the issue at one point as collateral estoppel (*cf. National Labor Relations Bd. v Roswil, Inc.*, 55 F3d 382, 386 [8th Cir 1995] [noting interrelated questions including deference and collateral estoppel]), asserts the arbitrator's ruling on past practices as a ground to grant the petition.