Peters, PJ.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which found that petitioner had committed an improper employer practice.
In June 2003, petitioner sent a memorandum to faculty and staff represented by respondent Chenango Forks Teachers Association, NYSUT, AFT, AFL-CIO, Local 2561 (hereinafter the Association) announcing that it would cease its longstanding practice of reimbursing retirees’ Medicare Part B premiums. Although the 2001-2004 collective bargaining agreement (hereinafter CBA) in place at the time between petitioner and the Association did not explicitly obligate petitioner to make such reimbursements, petitioner had done so since at least 1980 when such reimbursement was required by the Empire Plan, the health insurance plan provided to employees up until 1990. That year, petitioner and the Association entered into a new CBA, and health insurance coverage was changed to Blue Cross/ Blue Shield, which did not require the reimbursement of Medicare Part B premiums. Petitioner, however, continued to make such reimbursements.
As a result of the June 2003 memorandum, the Association initiated a grievance alleging a violation of the CBA.[1] At the same time, the Association filed an improper practice charge *1480 with respondent Public Employment Relations Board (hereinafter PERB) alleging that petitioner violated Civil Service Law § 209-a (1) (d) by failing to negotiate the discontinuance of reimbursement of Medicare Part B premiums. PERB conditionally dismissed the charge subject to a motion to reopen the matter after the conclusion of the grievance procedure. When the grievance proceeded to arbitration, an arbitrator determined that petitioner was under no contractual obligation to continue the payments.
Thereafter, the Association successfully moved to reopen the PERB proceeding. Following a hearing, an Administrative Law Judge (hereinafter the ALJ) found that petitioner’s practice of reimbursement had “giv[en] rise to a reasonable expectation by current employees that they proceed under a promise of post-retirement [reimbursement]” and, thus, petitioner’s unilateral decision to discontinue reimbursement violated its collective bargaining obligations under Civil Service Law § 209-a (1) (d). Upon administrative appeal, PERB rejected petitioner’s several exceptions, but remanded the case to the ALJ to take additional evidence from the parties as to whether the Association and/or current employees had actual or constructive knowledge of the reimbursement so as to determine whether either had a reasonable expectation that the practice would continue. Following a hearing during which testimony was presented from a number of current and former employees of petitioner, as well as Association representatives, the ALJ determined that both the Association and employees had been aware of the at-issue reimbursement for several years prior to the June 2003 memorandum and, thus, petitioner had violated Civil Service Law § 209-a (1) (d) by unilaterally ceasing the practice without negotiation. PERB affirmed the ALJ’s decision and this CPLR article 78 proceeding challenging PERB’s determination ensued.
Under the Taylor Law, a public employer is obligated to negotiate in good faith with the bargaining representative of its current employees regarding “terms and conditions of employment” (Civil Service Law § 204 [2]), and the failure to do so constitutes an improper employment practice (see Civil Service Law § 209-a [1] [d]). “Pursuant to this duty to negotiate, where a past practice between a public employer and its current employees is established, involving a mandatory subject of negotiation, the Taylor Law would bar the employer from discontinuing that practice without prior negotiation” (Matter of Aeneas *1481 McDonald Police Benevolent Assn. v City of Geneva, 92 NY2d 326, 331 [1998] [citations omitted]; see Matter of State of New York [Div. of Military & Naval Affairs] v New York State Pub. Empl. Relations Bd., 187 AD2d 78, 82 [1993]; Matter of Incorporated Vil. of Hempstead v Public Empl. Relations Bd., 137 AD2d 378, 383 [1988], lv denied 72 NY2d 808 [1988]; Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Empl. Relations Bd., 82 AD2d 691, 693-694 [1981]).
We reject petitioner’s assertion that reimbursement of Medicare Part B premiums is not a “term and condition of employment” subject to mandatory negotiation. Health benefits for current employees are a form of compensation, and thus a term of employment that is a mandatory subject of negotiation (see Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva, 92 NY2d at 331-332). While Civil Service Law § 201 (4) prohibits negotiation of certain retirement benefits, the continuation of health insurance payments to current employees after their retirement is not a retirement benefit within the meaning of that provision (see Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd., 48 NY2d 398, 404 [1979]; Matter of Jefferson-Lewis-Hamilton-Herkimer-Oneida BOCES [JLHHO BOCES Professional Assn.], 219 AD2d 801, 802 [1995], lv denied 87 NY2d 812 [1996]). Rather, such health insurance benefits, although paid after retirement, constitute a form of compensation earned by the employee while employed. Thus, as the Court of Appeals has held, and PERB rationally concluded here, petitioner “ha[d] a duty to negotiate with the bargaining representative of current employees regarding any change in a past practice affecting their own retirement health benefits” (Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva, 92 NY2d at 332 [emphasis omitted]; see Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd., 48 NY2d at 404; Matter of Jefferson-Lewis-Hamilton-Herkimer-Oneida BOCES [JLHHO BOCES Professional Assn.], 219 AD2d at 802; Matter of Corinth Cent. School Dist. [Corinth Teachers Assn.], 77 AD2d 366, 367 [1980], lv denied 53 NY2d 602 [1981]).
We next address the question of whether a binding past practice was established. Initially, we cannot agree with the dissent’s conclusion that PERB abused its discretion in declining to defer to the arbitrator’s finding in the grievance proceeding *1482 that a past practice did not exist.[2] The issue before PERB was whether, irrespective of any contractual obligation in the parties’ CBA, a past practice of reimbursing retirees for Medicare Part B premiums was established such that petitioner was barred from discontinuing that practice without prior negotiation (see Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva, 92 NY2d at 331; Matter of Incorporated Vil. of Hempstead v Public Empl. Relations Bd., 137 AD2d at 383; Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Empl. Relations Bd., 82 AD2d at 693). In determining whether a binding past practice exists, PERB’s inquiry focuses on whether the employer’s “practice was unequivocal and was continued uninterrupted for a period of time under the circumstances to create a reasonable expectation among the affected unit employees that the [practice] would continue” (Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd., 61 AD3d 1231, 1233 [2009] [internal quotation marks and citations omitted]; accord Matter of Fashion Inst, of Tech. v New York State Pub. Empl. Relations Bd., 68 AD3d 605 [2009]). In stark contrast, the specific issue before the arbitrator was whether petitioner was under a contractual obligation to make Medicare Part B reimbursement payments to retirees.
As the arbitrator noted at the outset of his decision, his jurisdiction was derived solely from the parties’ CBA and limited to interpreting the language contained within the four corners of the agreement. The arbitrator ultimately concluded that petitioner did not have a contractual obligation to reimburse retirees for Medicare Part B premiums because the CBA lacked language requiring such payments and did not contain a maintenance of benefits clause requiring the continuation of noncontractual past practices. Thus, the arbitrator’s statement in the award that there was no past practice regarding the at-issue benefits was entirely dicta and, as noted by PERB, was neither convincing nor binding upon it (see Matter of Schuyler-Chemung-Tioga Educ. Assn. [Schuyler-Chemung-Tioga Bd. of Coop. Educ. Servs.], 34 PERB 11 3019 [2001]). Moreover, while the dissent correctly notes that PERB has articulated a policy of deferring to an arbitrator’s decision in an improper practice proceeding “under certain limited circumstances” (Matter of New York City Tr. Auth. [Transport Workers Union of Am.], 4 PERB 11 3031 [1971]), PERB has also made clear that it “is not required to defer to a determination made by an arbitrator and *1483 certainly should not defer to such a determination where [it] concludes that the statutory scheme is not effectuated by an award” (id.). Here, it is unclear what, if any, criteria the arbitrator used in summarily concluding, in dicta, that no binding past practice existed and, as PERB specifically noted in its decision, to the extent the arbitrator may have attempted to apply its past practice criteria, the arbitrator’s conclusion was repugnant to the Civil Service Law. Under these circumstances, PERB’s declination to defer to the arbitrator’s finding in addressing whether a past practice existed was neither arbitrary nor capricious (see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd., 267 AD2d 935, 936-937 [1999]).
Turning to the merits of its past practice determination, PERB found a reasonable expectation by unit employees that they would receive reimbursement of Medicare Part B premiums upon their retirement. This finding is supported by the stipulated facts that petitioner reimbursed Medicare Part B premiums to active employees and retirees since at least 1980 and that, despite the fact that the health insurance coverage provided under the CBAs subsequent to 1990 did not require such reimbursement, petitioner continued to do so until July 2003. Furthermore, numerous witnesses testified that they were made aware of petitioner’s practice prior to the June 2003 announcement through conversations with other employees or retirees. Contrary to petitioner’s contention, PERB properly determined that these out-of-court statements regarding what the witnesses were told were offered not to prove the truth of the statements, but to establish what the witnesses believed at the time, and therefore were admissible for that purpose (see Matter of Bergstein v Board of Educ., Union Free School Dist. No. 1 of Towns of Ossining, New Castle & Yorktown, 34 NY2d 318, 324 [1974]; Grossjahann v Wilkins & Sons, 244 AD2d 808, 810 [1997]). Moreover, to the extent that petitioner challenges the veracity of certain witnesses, highlights inconsistencies in their testimony and stresses the paucity of proof, it is not our role to weigh the evidence or assess the credibility of the testimony presented (see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd., 2 AD3d 1197, 1198 [2003]; Matter of Romaine v Cuevas, 305 AD2d 968, 968-969 [2003]; Matter of De Vito v Kinsella, 234 AD2d 640, 642 [1996]). Inasmuch as the testimony credited by PERB supplies a rational basis to support its determination that there was a qualifying past practice that was improperly terminated by petitioner, the determination must be upheld (see Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd., 61 AD3d at 1234).
*1484 Nor can we conclude that, by entering into a new CBA for the 2004-2007 period, which is silent regarding the reimbursement of Medicare Part B premiums, the Association waived its right to negotiate a change in petitioner’s practice of providing Medicare Part B reimbursement. “A waiver is the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it . . . Such a waiver must be clear, unmistakable and without ambiguity” (Matter of Civil Serv. Empls. Assn. v Newman, 88 AD2d 685, 686 [1982] [internal quotation marks and citation omitted], affd on op below 61 NY2d 1001 [1984]; accord Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd., 7 NY3d 458, 465 [2006]; see Matter of County of Erie v State of New York, 14 AD3d 14, 17 [2004]). Despite petitioner’s assertion to the contrary, the boilerplate language in the 2004-2007 CBA — that it “constitutes the full and complete commitments of the [parties] whether or not any item contained [within it] was known or should have been known, or was or was not discussed by the parties at the moment when they entered into this agreement” — does not evince an explicit, unmistakable, and unambiguous waiver of the Association’s right to negotiate (see Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Empl. Relations Bd., 82 AD2d at 694).[3] Further, while the 2004-2007 CBA, like the previous CBAs, requires petitioner to pay premiums for other forms of insurance after retirement and provides that it “shall supersede any . . . practice of [petitioner] which shall be contrary to or inconsistent with its terms,” it is entirely silent with respect to Medicare Part B insurance, and whether such premiums will or will not be reimbursed. Moreover, it is undisputed that the subject was not discussed during negotiations for the 2004-2007 CBA. In the absence of any provision in the 2004-2007 CBA regarding the reimbursement of Medicare premiums and without any record evidence to demonstrate a conscious discussion of the issue during collective bargaining that could support petitioner’s contention that the Association waived its right to negotiate with respect to this issue, PERB’s conclusion that the Association did not waive its right to negotiate is rational and supported by substantial evidence (see Matter of County of Erie v State of New York, 14 AD3d at 17; Matter of City of Poughkeepsie v Newman, 95 AD2d 101, 104 [1983], appeal dismissed 60 NY2d 859 [1983], lv denied 62 NY2d 602 [1984]; Matter of Civil Serv. Empls. Assn. v New *1485 man, 88 AD2d at 686; Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Employment Relations Bd., 82 AD2d at 694; see also Matter of Odessa-Montour Cent. School Dist. v New York State Pub. Empl. Relations Bd., 228 AD2d 892, 894 [1996]; compare Matter of Frontier Ins. Co. v Koppell, 225 AD2d 93, 95 [1996], lv denied 90 NY2d 806 [1997]).[4]
Finally, reimbursing active employees for Medicare Part B premiums does not constitute an improper gift of public funds (see NY Const, art VIII, § 1), as the reimbursements represent compensation earned by employees while employed and in consideration for a benefit furnished to petitioner (see Gagliardo v Dinkins, 89 NY2d 62, 74-75 [1996]; Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington, 30 NY2d 122, 128 [1972]).
Petitioner’s remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be without merit.
Kavanagh and Garry, JJ., concur.

. A group of retirees also commenced a CPLR article 78 proceeding to annul petitioner’s determination to discontinue Medicare Part B premium reimbursements (Matter of Bryant v Board of Educ., Chenango Forks Cent. School Dist., 21 AD3d 1134 [2005]). This Court remitted the matter to Supreme Court for further record development to determine whether there had been a “corresponding diminution of benefits or contributions” effected by petitioner from active employees (L 2003, ch 48, § 1; see Matter of Bryant v *1480 Board, of Educ., Chenango Forks Cent. School Dist., 21 AD3d at 1137-1138). The instant proceeding, by comparison, involves current employees of petitioner.

. We note that the dissent raises this issue despite the fact that it was not argued by petitioner in either its petition or brief to this Court.

. Notably, this clause, as well as the “supersession clause,” was carried over from the 2001-2004 CBA and left completely unchanged.

. In reaching this result, we reject petitioner’s contention that PERB’s determination was arbitrary and capricious for failing to follow its own precedent. Matter of Waverly Cent. School Dist. (Waverly Assn. of Support Personnel) (20 PERB 114569 [1987]), relied upon by petitioner, is readily distinguishable in that there, unlike here, the CBA entered into between the parties contained language that was explicitly at odds with the past practice sought to be enforced.